1              UNITED STATES COURT OF APPEALS

2            IN THE THIRD CIRCUIT COURT OF APPEALS

3

4     --------------------------------x

5     XIAOXING XI, ET AL.,                :

6            Appellants,                  :

7                                         :

8       v.                               : Case No. 21-2798

9                                         :

10    SPECIAL AGENT ANDREW                :

11    HAUGEN, ET AL.,                     :

12            Appellees.                  :

13    --------------------------------x

14                          HEARING

15    DATE:        Wednesday, September 14, 2022

16    TIME:        10:53 a.m.

17    BEFORE:      Honorable Cheryl Ann Krause

18                 Honorable Stephanos Bibas

19                 Honorable Marjorie O. Rendell

20    LOCATION:

                   601 Market Street, 19th Floor

21                 Philadelphia, Pennsylvania  19106

22    JOB No.:     5469780

23

24

25

Page 2

```
 1              A P P E A R A N C E S
 2    ON BEHALF OF APPELLANTS:
 3         DAVID RUDOVSKY, ESQUIRE
 4         Kairys Rudovsky Messing Feinberg & Lin
 5         718 Arch Street, Suite 501 South
 6         Philadelphia, Pennsylvania  19106
 7         drudovsky@krlawphila.com
 8         (215) 925-4400
 9
10         ASHLEY M. GORSKI, ESQUIRE
11         American Civil Liberties Union
12         125 Broad Street, 18th Floor
13         New York, New York  10004
14         agorski@aclu.org
15         (212) 284-7305
16
17         SUSAN M. LIN, ESQUIRE
18         Kairys Rudovsky Messing Feinberg & Lin
19         718 Arch Street, Suite 501 South
20         Philadelphia, Pennsylvania  19106
21         slin@krlawphila.com
22         (215)925-4400
23
24
25
```

1             A P P E A R A N C E S (CONT.)

2        JONATHAN H. FEINBERG, ESQUIRE

3        Liaison Counsel

4        Kairys Rudovsky Messing Feinberg & Lin

5        718 Arch Street, Suite 501 South

6        Philadelphia, Pennsylvania  19106

7        jfeinberg@krlawphila.com

8        (215)925-4400

9

10       JONATHAN HAFETZ, ESQUIRE

11       One Newark Center

12       Newark, New Jersey  07102

13       Jonathan.hafetz@shu.edu

14

15       PATRICK TOOMEY, ESQUIRE

16       American Civil Liberties Union

17       125 Broad Street, 18th Floor

18       New York, New York  10004

19       ptoomey@aclu.org

20       (212) 519-7816

21

22

23

24

25

1          A P P E A R A N C E S (CONT.)

2    ON BEHALF OF APPELLEES:

3         LEIF E. OVERVOLD, ESQUIRE

4         United States Department of Justice

5         Appellate Section

6         950 Pennsylvania Avenue, Northwest

7         Washington, D.C.  20530

8         leif.overvold2@usdoj.gov

9         (202) 532-4631

10

11        PAUL E. WERNER, ESQUIRE

12        United States Department of Justice

13        Torts Branch, Civil Division

14        P.O. Box 7146, Ben Franklin Station

15        Washington, D.C.  20044

16        paul.werner@usdoj.gov

17        (202) 616-4152

18

19        SHARON SWINGLE, ESQUIRE

20        United States Department of Justice

21        Civil Division

22        950 Pennsylvania Avenue, Northwest

23        Washington, D.C.  20530

24        Sharon.swingle@usdoj.gov

25        (202) 353-2689

1                      C O N T E N T S

2   ARGUMENTS

                                                    PAGE

3        By Counsel for Appellants                    6

4        By Counsel for Appellees                    39

5

6   REBUTTAL

7        By Counsel for Appellants                   53

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                P R O C E E D I N G S

2           JUDGE #1:  We'll call the case of Xi versus

3      FBI Special Agent Andrew Haugen.

4           MR. RUDOVSKY:  May it please the Court, David

5      Rudovsky for the Plaintiff Appellants in this case,

6      Professor Xi and his family.

7           JUDGE #2:  How does he pronounce his last

8      name?

9           MR. RUDOVSKY:  Xi.

10          JUDGE #2:  Xi.

11          MR. RUDOVSKY:  I would like to reserve two

12     minutes for rebuttal, please.

13          JUDGE #1:  Granted.

14          MR. RUDOVSKY:  This Appeal from a District

15     Court grant of a Motion to Dismiss, we submit three

16     basic points.  First, that Plaintiff Xi, based on the

17     plausible allegations in the Second Amended Complaint,

18     was subjected to a malicious prosecution, searches

19     without probable cause, fabrication and falsification

20     of evidence, and ethnic-based bias.  The violations are

21     actionable under the Federal Tort Claims Act and are

22     not barred by the discretionary function exception,

23     and the action -- the violations are actionable also

24     under the Bivens doctrine as they are not presented in

25     a materially new context.

1          Let me start with just one observation before

2    I get into the -- the legal arguments of that FTCA and

3    Bivens.  The violations here had a devastating

4    consequences for Professor Xi and his family.  He was

5    branded as a technological spy for China, suspended as

6    the Chair of the Physics Department at Temple

7    University, forced to live for months under a cloud of

8    suspicion and fear.  The District Court was wrong on

9    all issues.  This is a case about accountability.

10         JUDGE #1:  Mr. Rudovsky, you started out by

11   saying this is a case about malicious prosecution and

12   fabrication and I quite agree.  You're arguing that

13   it's not a new claim under Bivens and yet we've got

14   three courts of appeals who have looked at

15   fabrication, malicious prosecution very similar to

16   this situation, who have said this is a new -- this

17   would be a new Bivens claim and therefore is barred.

18   How can you say to us that this is not a new Bivens

19   claim?

20         MR. RUDOVSKY:  Yeah.  So on Bivens, we think

21   we fit into the heartland of Bivens.  When we look at

22   what the agent did in this case, it's not materially

23   different from Bivens.  The Government argues that

24   there was a different mechanism for the injury and a

25   different conduct.  What happened here was --

1            JUDGE #1:  Well, if it were only the search

2      and seizure -- for only the search, then you'd fit in

3      Bivens, but the -- the -- the gravamen of your -- of

4      the Complaint is what you've said.  His life was

5      ruined by the fabrication and the malicious

6      prosecution, not by the search and seizure.

7            MR. RUDOVSKY:  Well, all -- all of it was

8      part of it.  Certainly, with the emotional damage he -

9      - he suffered from the search of his house, from the

10     strip search of him --

11           JUDGE #1:  But that's not a Bivens claim.

12           MR. RUDOVSKY:  -- was accountable.  It -- the

13     fact that they went further than they did in Bivens --

14     the Jacobs case in the 6th Circuit holds that.  That

15     was a wrongful arrest claim under Bivens and so on.

16           JUDGE #2:  But we have Egbert versus Boule,

17     the Supreme Court saying, "We're not even sure we

18     decide this Bivens the same way.  We're going to

19     preserve these three specific contexts, but don't go

20     beyond them at all."  And here we have national

21     security implications and alleged spying and other

22     things, so any possible grounds to distinguish this

23     from those three cases don't allow a Bivens claim to

24     go forward.

25           MR. RUDOVSKY:  Judge Bibas, I agree it's a narrow

1   avenue to Bivens.  The Court has not overruled Bivens.

2   Egbert does nothing more than in Abbasi and what the

3   Government argues here, they concede that five of

4   the six factors in -- in Abbasi don't apply; they only

5   argue that somehow if we allow the judiciary to become

6   involved in this case, that would affect national

7   security.  Bivens itself was a case about drugs, which

8   was a national security issue according to the

9   Government.  We have -- we have -- we have no

10  difference here.  Our point is when you look exactly

11  what happened here, Bivens was a search without

12  probable cause, right, of -- of -- of a home.  Under

13  our allegations, what happened here is both the

14  indictment and the search warrant were without

15  probable cause --

16            JUDGE #1:  Why -- why haven't --

17            MR. RUDOVSKY:  -- based on our --

18            JUDGE #1:  -- we --

19            MR. RUDOVSKY:  -- plausible allegations.

20            JUDGE #1:  -- essentially crossed this bridge

21  already with Pellegrino and -- and Vanderklok?  And

22  that's to say, when we've -- when we've looked before

23  at the TSA context, we've said that there are national

24  security implications for that sort of -- of search

25  being conducted.

1           MR. RUDOVSKY:  And -- and -- and that's --

2           JUDGE #1:  Doesn't that apply just --

3           MR. RUDOVSKY:  -- right, that's why --

4           JUDGE #1:  -- as well here?

5           MR. RUDOVSKY:  Yes, and -- and -- and TSA was

6   different.  It was set up after 9/11 or -- or -- or

7   there was all those operations, obviously, national

8   security.  What you have here is simply an agent who's

9   given a label, right, as someone involved with

10  investigating possible confidential material going to

11  China, spying by China, and so on and so forth.  The

12  Court has said national security is not a talisman for

13  rejecting a Bivens claim and that's really what the

14  Government is arguing here just because we gave him

15  that label.  It turns out when you look at what this

16  agent did, it was based on ethnic bias.  There ought

17  to be strict scrutiny.  It's one thing to say --

18          JUDGE #2:  All right.

19          JUDGE #1:  I -- I --

20          JUDGE #2:  I'd like to know --

21          JUDGE #1:  Wait, I -- I -- I appreciate that

22  if we -- if -- or we're to drill down on that this

23  specific case, that it looks like more like a run-of-

24  the-mill 4th Amendment case, but Egbert tells us that

25  we should be thinking of this in terms of the entire

Page 11

1    field and if we're looking at the field involving

2    counterintelligence and FISA warrants which, according

3    to the Complaint, are also implicated here, then

4    aren't we really in a -- in a very different terrain

5    and one that does implicate national security --

6              MR. RUDOVSKY:  If -- if -- if --

7              JUDGE #1:  -- as a field.

8              MR. RUDOVSKY:  -- that's right.  If it was

9    FISA, if it was national security, we'd be in a

10   different field.  That issue still hasn't been decided by

11   the District Court.  That's Count 10 of our -- of our

12   -- of -- of our Complaint.  The District Court has not

13   decided any issues concerning FISA.  This case is not

14   based on a FISA violation, it's based on a straight

15   4th Amendment violation of an agent who conducted an

16   investigation, was able to obtain an indictment with

17   false information to the grand jury, and a search

18   warrant without probable cause.

19             JUDGE #1:  But the -- but the 4th Amendment

20   violation was not by him, it was by -- by other

21   officers.

22             MR. RUDOVSKY:  No, he -- no -- no, he -- he

23   provided all the information.  Other officers went to

24   the house, but it was based completely on the

25   information that he had provided.  The Search Warrant

1    Affidavit and the Indictment is all based on the false

2    information that he gave to other Governmental

3    officials.

4             JUDGE #1:  So isn't the gravamen of your

5    Complaint the false information?

6             MR. RUDOVSKY:  Falsification of evidence

7    --

8             JUDGE #1:  Right.

9             MR. RUDOVSKY:  -- false information --

10            JUDGE #1:  And how is that not a new Bivens

11   claim?

12            MR. RUDOVSKY:  It -- because it's based --

13            JUDGE #1:  We don't -- we don't even get to

14   whether there are reasons --

15            MR. RUDOVSKY:  Right, I -- I --

16            JUDGE #1:  -- to have caution --

17            MR. RUDOVSKY:  -- I -- I -- I --

18            JUDGE #1:  -- we get to the issue of --

19            MR. RUDOVSKY:  -- I understand the

20   reluctance, but -- and -- and which is why we placed

21   most of our emphasis on the Federal Tort Claims Act,

22   which --

23            JUDGE #1:  All right.  Well, maybe you'd --

24            MR. RUDOVSKY:  -- which I'd like to move to.

25            JUDGE #1:  -- better address that.

1              MR. RUDOVSKY:  I've made my point about

2      Bivens.  I understand where this Court is on Bivens.

3      Let me move, if I can, to the Federal Tort Claims Act.

4              JUDGE #1:  Okay.  Can you start where you

5      opened talking about it being sufficiently pleaded

6      here under Iqbal and Twombly and where -- the -- the

7      concerns that Judge Surrick had focused on the -- the

8      sort of generalized allegations of knowledge of

9      falsity without information about how specifically he

10     was advised, when the -- the special agent was

11     advised, and -- and contrast to show that he had -- he

12     had -- he knew or should have known.  Where -- where

13     do we find in the Complaint any specificity about that

14     -- that knowledge?

15             MR. RUDOVSKY:  In a number of places.  First

16     of all, Paragraph 3 of the Complaint states very

17     clearly that Agent Haugen had this information before

18     from the inventor of the pocket heater.  That's the

19     critical point.  He spoke to the inventor of the

20     pocket heater.  He had the information that what was

21     sent to China on these email communications had

22     nothing to do with the pocket heater, it had

23     everything to do with a device that Professor Xi

24     himself had invented; they're two different devices.

25     Paragraph 3 and Paragraph 53 both state -- and I don't

1   understand why Judge Surrick wouldn't understand

2   this -- both state that this information was known to

3   FBI Agent Haugen before he provided the false

4   information both to the U.S. Attorney and to the grand

5   jury and --

6           JUDGE #1:  But why was that (cross talk) --

7           MR. RUDOVSKY:  -- and beyond that, Paragraph

8   55 is as detailed as you can be.  We have six subparts

9   under Paragraph 55, which lays out all the false

10  information that Agent Haugen included after being

11  informed -- after being informed by the inventor of

12  the pocket heater and -- and let -- let me be clear on

13  what -- on what happened.  The inventor of the pocket

14  heater informed Haugen that based on his view -- he

15  looked at the emails, he looked at the schematics that

16  were sent allegedly illegally by Professor Xi to his

17  colleagues in China, and he informed Agent Haugen that

18  they were not related to the pocket heater.  This is

19  the person who invented the pocket heater and he said,

20  "I'm familiar with the pocket heater; I'm also

21  familiar with the device, a separate superconductivity

22  device, that Professor Xi had invented" --

23          JUDGE #1:  But where is there anything in the

24  Complaint about that -- that sequence that -- that he

25  was advised of that by the inventor before --

Page 15

1           MR. RUDOVSKY:   Paragraph 3 and Paragraph 53

2    both say he had that information before -- before he

3    provided the false information to the --

4           JUDGE #1:  It -- it says --

5           MR. RUDOVSKY:  -- grand jury.

6           JUDGE #1:  -- it alleges that he had

7    knowledge before, but Paragraph 55 that you're

8    pointing us to about how -- how -- any specificity

9    about how he obtained that knowledge and why we should

10   find that there is, you know, enough here for knew or

11   should have known ahead of time, doesn't say anything

12   about when he's told.

13          MR. RUDOVSKY:  But Paragraph 55 is the

14   details of that.  Paragraph 3, "Before the indictment

15   was sought and returned, Defendant Haugen knew or

16   recklessly disregarded the fact."  Paragraph 53 says

17   the same thing.  Paragraph 55 then fills in all the

18   plausible details as to why he should have known and

19   did know that what he was presenting was false and

20   fabricated.

21          JUDGE #1:  But you'd have us link those up to

22   say that it meets the -- the standard for sufficiency

23   of pleading?

24          MR. RUDOVSKY:  Absolutely.  This is -- you --

25   you -- it -- it's hard to be more detailed than we

1    were in Paragraph 55 as to everything that the

2    inventor of the pocket heater told FBI Agent Haugen.

3    And on that point, if he was told that -- we're not

4    claiming that to get an indictment in a scientific

5    issue of a somewhat complex case -- well, this case

6    turns to be much less complex than the Government

7    suggests that it is -- that the Government has to seek

8    out their own experts, but when they consult the

9    leading expert on this issue and that expert tells

10   them, "You're mistaken, there's nothing in any of

11   these emails that implicate or reveal secrets about

12   the pocket heater.  It has nothing to do with the

13   pocket heater."  It's like comparing a microwave to a

14   toaster; just because both things heat or cook food,

15   that's -- that's the agent's view.  Once he knew that,

16   he's left with nothing.  There's no reliable evidence

17   that Agent Haugen had to support the claim that

18   Professor Xi had shared confidential information with

19   colleagues in China.  There's nothing left.

20             JUDGE #1:  Can -- can I back up on it?

21   You're -- what you're saying now is addressed to the

22   fact that there -- there is a tort -- there are tort

23   claims here, correct?

24             MR. RUDOVSKY:  Absolutely.

25             JUDGE #1:  Now we have the -- the -- Judge --

Page 17

1   Judge Surrick decided that the discretionary function

2   exception didn't apply because the law was not clearly

3   established.

4           MR. RUDOVSKY:  Well, the -- the --

5           JUDGE #1:  And -- and now he didn't analyze

6   the claims, he just said discretionary function would

7   apply.  So there -- so I'm assuming that you're going

8   to argue that discretionary function should not apply

9   because you've pled Constitutional violations; is that

10  correct?

11          MR. RUDOVSKY:  Absolutely.  That -- that's

12  our basic argument --

13          JUDGE #1:  Okay.

14          MR. RUDOVSKY:  -- consistent with what this

15  Court has said for 30 years.

16          JUDGE #1:  All right.

17          MR. RUDOVSKY:  Assuming -- and we would grant

18  that when an agent is investigating criminal activity,

19  there's certain discretion that's involved, this Court

20  has held, a majority of the circuits in this country

21  have held, you've held it for 30 years that if the

22  agent violates the Constitution, has mandatory

23  provisions, it's no different than the language in the

24  statute that says if there's a policy, regulation or

25  statute that is mandatory in nature, it's no longer

Page 18

1   discretionary.

2           JUDGE #1:  Right, so which of the claims --

3           MR. RUDOVSKY:  If you violate the -- I'm

4   sorry.

5           JUDGE #1:  -- so which of the claims under

6   the Federal Tort Claims Act fall under that category?

7   You've pled Count 4 is Malicious Prosecution, Count 5

8   is Invasion of Privacy, Count 6 is False

9   Light/Emotional Distress.  Which -- and should we

10  analyze this or should we send this back to the

11  District Court to say, "You were wrong about

12  discretionary function.  If there's a Constitutional

13  violation alleged, then you have no discretion to

14  violate the Constitution.  Please analyze these

15  claims."  Should we -- do we need to do that?

16          MR. RUDOVSKY:  We don't need a remand.  The

17  Government doesn't even argue that we have not -- if -

18  - if we've stated Constitutional claims.  And remember

19  the process --

20          JUDGE #1:  Which are the -- which are the

21  specific Constitutional --

22          MR. RUDOVSKY:  Okay.

23          JUDGE #1:  -- claims you believe you've pled?

24          MR. RUDOVSKY:  Specific Constitutional claims

25  that -- that we have alleged -- and even if we -- if

1   we were required to show they were clearly

2   established, this Court has already done that in

3   Halsey and -- and Pfeiffer and -- and Black versus

4   Montgomery County.  Malicious Prosecution Number One,

5   "Fabrication of Evidence Two" -- there's a separate

6   freestanding fabrication of evidence claim under the

7   5th Amendment.  This Court held that in Black and

8   Halsey.

9            JUDGE #1:  Well, I don't see a Federal --

10  you've got two arguably qualifying Federal Tort Claims

11  Act, malicious prosecution and invasion of privacy.

12           MR. RUDOVSKY:  And we've got fabrication of

13  evidence, a search warrant without probable cause, and

14  --

15           JUDGE #1:  Well, that would be invasion of

16  privacy, but I -- fabrication of evidence would come

17  in under malicious prosecution, I assume.

18           MR. RUDOVSKY:  Right, and -- and -- and --

19  and the reason it -- it's framed that way, it's under

20  the Tort Claims Act.  We're not arguing that we've got

21  a claim under the Federal Tort Claims Act because

22  there was a federal Constitutional violation, that's

23  not a basis for a Federal Tort Claims Act --

24           JUDGE #1:  No, it's -- it's (cross talk) --

25           MR. RUDOVSKY:  -- we have -- it's got to be

Page 20

1    state --

2            JUDGE #1:  -- to take you out of the

3    discretionary function exception.

4            MR. RUDOVSKY:  -- it -- that's -- that's

5    right.  It -- it's state law -- under state law, we

6    state claims that under Pennsylvania law, there was a

7    malicious prosecution, there was fabrication of

8    evidence, there was a search warrant privacy interest

9    without probable cause, and -- and that there was race

10   or ethnic bias.

11           JUDGE #2:  Okay.  What (cross talk) --

12           MR. RUDOVSKY:  The District Court did not

13   disagree on any of that.  The District Court didn't

14   say, "You didn't properly state -- state" -- I'm

15   sorry, Judge Bibas, but just -- just finish this one

16   point.

17           JUDGE #2:  Yeah, finish this please.

18           MR. RUDOVSKY:  District Court did not say

19   that there was a lack of a basis for state law.  That

20   gets us within the umbrella of the Tort Claims Act.

21   The Government then comes back and says, "That may be

22   true, but it's discretionary function," but the

23   response to that, obviously, which is what we made, is

24   that if there's a Constitutional violation under

25   Pooler and -- and -- and the other case in this

Page 21

1  Circuit, it's no longer discretionary.  The Supreme

2  Court has said the Constitution is mandatory, Owens

3  versus City of Independence.

4          JUDGE #1:  What about Fisher?  Specifically,

5  we asked you about the -- the false light claim and

6  where there's the intervening act of the U.S.

7  Attorney's Office press release appearing to be the

8  cause of the putting in the false light for the

9  reputational damage --

10          MR. RUDOVSKY:  Yeah, I -- I -- I (cross talk)

11  --

12          JUDGE #1:  -- why -- why doesn't Fisher take

13  that out of the equation?

14          MR. RUDOVSKY:  -- I think all that is cause

15  and we need more discovery on that obviously.  There's

16  stuff in the Protective Order that -- that -- that's

17  going to be relevant on that, but the point is that

18  everything that happened here from the grand jury

19  indictment to the search warrant for his house to the

20  arrest warrant for him to any statement by the U.S.

21  Attorney's Office, which by the way, within three

22  months after they saw the same evidence that Haugen

23  had, dismissed the indictment, right, based on that.

24  All of that is the causation of Haugen.

25          JUDGE #2:  They're "but for" causes, but

1  Fisher suggests it might not count as a proximate

2  cause.

3         MR. RUDOVSKY:  Well, let me address Fisher

4  for a second.  I -- I -- I -- I think there are at

5  least four different distinguishing factors.  We -- we

6  received your Notice about -- to look at Fisher and I

7  think the reason the Government didn't argue and we

8  didn't -- as I said, we both agree it's not relevant.

9  It's inapposite on -- on -- on multiple levels.

10 Fisher said we have two possible causal agents, right,

11 in -- in this case.  We have the lab agents who were

12 negligent, right, they found them negligent.  That

13 could have been a Tort Claims Act, but that was

14 supervened, right, when the head of the agency acting

15 on a health emergency question, right, you know,

16 people could be poisoned by these -- by these grapes -

17 - decided in his discretion or her discretion, whoever

18 the -- the -- the -- the leader was at that point --

19 that, "I'm going to pull these, you know, and destroy

20 these -- these items from the market, right, to

21 protect the public."  That's far different from here.

22 We don't have two agents.  We're challenging only the

23 actions of Defendant Haugen, who was the sole cause of

24 the violation, and the grand jury, which is the

25 operative, right, agency here, is not a Government

Page 23

1   employee; therefore, we don't have the kind of

2   situation you had in Fisher where you had two possible

3   causal agents and we had to decide which one.  You

4   only have one here.

5          JUDGE #2:  But the grand jury with secrecy

6   doesn't really -- we're -- we're talking here about

7   the press release that the U.S. Attorney released,

8   which is a separate Governmental actor that made a

9   decision to issue the press release.

10          MR. RUDOVSKY:  Right, so to the extent there

11  was a press release, that increased the damage, it

12  did, but the -- the -- the damage to Professor Xi and

13  his family wasn't because of a press release.  I mean,

14  that -- that adds to the damages here to -- to what he

15  suffered.  The damage was he's indicted, he's -- his

16  house is searched, he's strip-searched, he's accused

17  of being a technological spy basically in the

18  indictment.  That's the information that caused him to

19  be suspended at -- at Temple University and that's the

20  information that defamed him nationally.  And he was

21  under a cloud -- he was facing 80 years in prison and

22  $1 million fine based on completely false information.

23  And -- and therefore, under -- under -- under the Tort

24  Claims Act, the -- the -- let me just say with respect

25  to Fisher, Fisher didn't deal with the intentional

Page 24

1    tort provision in the -- in the FTCA and the Myles

2    decision at the 9th Circuit, which we've advised the

3    Court of recently, goes even further.  Myles says not

4    only by 9th Circuit law and by law of most of the

5    circuits, if there's a Constitutional violation,

6    there's no discretionary function, but Myles make

7    another important point that distinguishes it from --

8    from Fisher.  Myles says if the Government was right

9    in arguing, as it did in the Shivers and the other case in

10   the -- in the 7th Circuit, which -- which is found by

11   statutory construction, a defense under discretionary

12   function, it would read out all the intentional torts.

13   When Congress amended the FTCA in 1974 to include

14   intentional torts as opposed to just negligence by the

15   Government, that became an important factor.  These

16   are all intentional torts.  If -- if you read Fisher,

17   right, to bar that, that whole section of the FTCA

18   becomes inoperable.

19        JUDGE #2:  No -- no -- no, there's a

20   difference between one person doing something

21   intentional versus one person inducing someone else to

22   do something intentional.  That's what it's getting

23   at.

24        MR. RUDOVSKY:  Well, and -- and -- and -- and

25   we understand by Fisher, very close case 7-6

Page 25

1   in this, you know, en banc -- and in the

2   circuits, you could, you know, you obviously have good

3   arguments on both sides to be sure, but Fisher also

4   recognized that what that agent in the lab did was

5   negligent.  It could have been actionable if that was

6   the action of the agency; that's exactly what we have

7   here.  We have the lower agent -- we don't have the

8   head of the FBI making a decision after this; this is

9   a single agent that's acting.  This single agent acted

10  in violation of the Constitution.  We've got plausible

11  allegations here of that and as a result of that, we

12  have two arguments.  One, there's a complete -- I

13  could use the word "trump" of the -- of the

14  discretionary function exception because you have a

15  Constitutional violation, that's why it's relevant.

16  And, Number Two, to -- to -- as a matter of statutory

17  construction, think about what happens to that clause.

18  There -- there -- there's nothing left in the usual

19  case where you have a single agent acting.

20          JUDGE #2:  Well, what's -- well, let -- let's

21  talk about that.  I think the best argument for the

22  minority position that maybe Constitutional violations

23  are not -- don't categorically come out of it is if

24  Shivers from the 11th Circuit says, "Look, we've got

25  this language at the end of the discretionary function

Page 26

1    exception that says, 'Whether or not such discretion

2    is abused.'"  And the way the 11th Circuit puts it at

3    1 F4th at 931, "The inquiry is not about how

4    poorly, abusively, or unconstitutionally the employee

5    exercises discretion, but whether the underlying

6    function or duty itself was a discretionary one."  So

7    it's a -- it -- the fit with the language, you're

8    focusing on whether the act was unconstitutional, but

9    the language, whether or not such discretion was

10    abused suggests maybe the individual act was wrongful,

11    but if the whole function is the kind that was carved

12    out by that clause, doesn't that put it on a different

13    footing?

14          MR. RUDOVSKY:  Completely inconsistent with

15    what this Court has said for 30 years and what a

16    majority of the circuits have said.  You'd have to

17    reverse yourself.  On Pooler and the other cases, you

18    have not taken that view of the FTCA, nor has the D.C.

19    Circuit, the 2nd Circuit, the 9th Circuit and -- and

20    the -- and the fundamental misreading of the 11th

21    Circuit -- and it was a good dissent on the 11th

22    Circuit case as well -- is that they said their --

23    their proposition was that the federal -- a federal

24    Constitutional violation doesn't violate the FTCA.  We

25    agree -- we agree with that.  That's their position.

Page 27

1   They didn't go further, they didn't analyze the FTCA

2   as I just did, saying you look to state law first,

3   that's the first step.  Was there a violation of state

4   law?  Yes.  Assuming the agent was otherwise engaged

5   in discretionary functions, did the agent violate the

6   Constitution?  Yes.  If so, there's no discretion to

7   violate the Constitution?

8               JUDGE #2:  Well, what's left then of the

9   whether or not such discretion is abused clause?  What

10  situation --

11              MR. RUDOVSKY:  It -- it --

12              JUDGE #2:  -- would that still cover?

13              MR. RUDOVSKY:  -- it -- the proposition is --

14  and -- and the language in the statute -- the language

15  in the statute says if you violate a mandatory statute

16  --

17              JUDGE #2:  Uh-huh.

18              MR. RUDOVSKY:  -- policy or regulation,

19  you've got no discretion.

20              JUDGE #2:  Right.

21              MR. RUDOVSKY:  There's no difference between

22  violating a statute, a regulation, and a policy, and

23  violating the Constitution.  Owens versus City of

24  Independence says the Constitutional are -- are

25  mandatory.  The Government tries to argue it will

1  certainly not be mandatory, we ought to do it by

2  --

3          JUDGE #1:  Well, and -- and isn't the answer

4  that abuse of discretion is far -- a far lighter

5  problem than Constitutional violation.  I mean, abuse

6  of discretion is something --

7          MR. RUDOVSKY:  Absolutely.

8          JUDGE #1:  -- we -- we know about.

9          MR. RUDOVSKY:  Which -- which is -- which is

10 why the fiduciary case in this Circuit from -- from

11 the beginning, this Court has recognized, as has every

12 circuit until these two recent decisions, which I

13 submit are wrong.  I think Myers (ph) is right on that

14 -- the -- the answer to that, but however you think

15 about that, this Court, if it's going to follow the

16 precedent in this Court, this is an easy case.

17         JUDGE #2:  Let me ask you about pleading.  I

18 don't see the specific pleading of ethnic and

19 nationality discrimination here.  What in your

20 Complaint satisfies Twombly and Iqbal?

21         MR. RUDOVSKY:  So the -- the -- the -- the --

22 the -- the -- the pleading is this, when you look at

23 what the agent did, having been informed by the

24 inventor of the pocket heater that nothing in this --

25 in these four emails, right, has anything to do with

1   the pocket heater -- you're misreading it, this

2   relates to his own instrument -- the agent is left

3   with nothing if you accept that allegation.  And we're

4   at a Motion to Dismiss stage -- we'll -- we'll find

5   out more about what the agent did and why he thought -

6   - continued to think, if that's what he did, that

7   there was a violation, when we get to discovery.  But

8   once that's done, the agent is left with nothing,

9   right?  And so our allegation is his motive, at least

10  in part, because he was part of this unit that's

11  investigating, right, scientist of sharing of

12  information with China.  Nothing wrong with the

13  Government doing that kind of investigation; we

14  understand that.  We've got an inference, as least at

15  this point, that what he acted on was the ethnic bias.

16          JUDGE #1:  Where -- what gives rise to that

17  inference?  The inference just as -- as easy that he

18  just didn't like him and he -- maybe he resented him -

19  -

20          MR. RUDOVSKY:  There are whole --

21          JUDGE #1:  -- there's -- there's nothing

22  here.

23          MR. RUDOVSKY:  -- there's -- there's a whole

24  range of possibilities here.

25          JUDGE #1:  Right, but at least in --

1           MR. RUDOVSKY:  He didn't -- he didn't like

2    him.

3           JUDGE #1:  -- at least in your pleading --

4           MR. RUDOVSKY:  I'll get -- I'll get credit --

5           JUDGE #1:  -- you have to -- you have to

6    plead something that gives rise to that inference.

7           MR. RUDOVSKY:  The -- the fact that he's of

8    this unit, right, and -- and -- and at this point, on

9    -- on a -- on a Motion to Dismiss, if he's left with

10   nothing, sure, one inference is he continued to think

11   wrongly, "I did it right."  That's going to be an

12   issue whether it's negligence or recklessness or --

13   but that -- that's a jury issue.  The second inference

14   is possibly, "I'll do it because if I can get an

15   arrest, that's a credit to me as a, you know, as an

16   FBI agent."  Sure, you know, it's just work-related.

17   The third inference is that he acted this way because

18   of the ethnicity of Professor Xi, that if Professor Xi

19   was not, right --

20           JUDGE #1:  That's not an inference, that's a

21   possibility.

22           MR. RUDOVSKY:  I -- I -- I think we have

23   enough at -- our position is at least at the -- at the

24   pleading stage, before we get to discovery -- and

25   remember, we were hampered in -- in part.  We -- we

1  gave this Court a lot, we gave the District Court a

2  lot in terms of the details.  Some of the information

3  we couldn't make public, it was subject to a

4  protective order during that --

5           JUDGE #2:  Anything here that --

6           MR. RUDOVSKY:  -- criminal trial.

7           JUDGE #2:  -- suggests that a -- a white

8  person suspected of passing information to the Chinese

9  Government or another Government would not have

10  received this treatment.  What -- what is there?

11          MR. RUDOVSKY:  Well, we do know on the record

12  and you -- and you have it from the amicus briefs

13  -- of the number of cases which have been dismissed

14  after indictments were returned of other Chinese

15  American scientists, right?

16          JUDGE #1:  But there's no allegation that

17  Special Agent Haugen was involved with those cases.

18  Don't we need -- I mean, as -- as -- in terms of an

19  inference of discriminatory animus, doesn't that have

20  to be --

21          MR. RUDOVSKY:  Yeah.

22          JUDGE #1:  -- specific to the -- this actor?

23          MR. RUDOVSKY:  The -- this Court's decision

24  in Pitts, which we cite under -- under racial

25  discrimination, it says you can -- you can prove it by

Page 32

```
 1    circumstantial evidence --
 2              JUDGE #1:  Of course.
 3              MR. RUDOVSKY:  -- you don't need a smoking
 4    gun, you don't need --
 5              JUDGE #1:  But we don't even have any
 6    circumstantial evidence.  We have --
 7              MR. RUDOVSKY:  I -- I --
 8              JUDGE #1:  -- a possibility.
 9              MR. RUDOVSKY:  -- when -- when -- when you're
10    left with nothing, when -- when an agent knows based
11    again, on our allegations, since we're only at the
12    Motion to Dismiss stage, when the agent knows for
13    sure, "I've got nothing," and proceeds anyway and that
14    agent is part of a unit that's looking specifically at
15    Asian Americans, there is a risk under strict
16    scrutiny, right, that that agent --
17              JUDGE #2:  There is a risk.
18              MR. RUDOVSKY:  -- that that -- that agent,
19    right, is looking through a different lens than the
20    agent should look at -- that -- that's our position.
21              JUDGE #1:  We -- we can't -- we can't read an
22    -- an inference of discrimination into -- into
23    silence.  I mean the implications of that for
24    malicious prosecution and retaliation claims are --
25    that -- that's just not tenable.
```

1          JUDGE #2:  Nothing can't be enough to satisfy

2    Twombly and Iqbal .

3          MR. RUDOVSKY:  Right, but let me be clear.  I

4    -- I understand the Court's understanding and -- and

5    maybe the -- the -- the gap here at this stage in

6    terms of racial or ethnic bias.  That has nothing to

7    do with our other claims, right?  Our other claims are

8    sufficient, malicious prosecution, falsification of

9    evidence, search without probable cause --

10         JUDGE #1:  To be clear, is the -- the -- the

11   circumstantial evidence that you would say

12   distinguishes this case is that you've made

13   allegations about the bias of the agency to which this

14   actor is associated?

15         MR. RUDOVSKY:  That's right.

16         JUDGE #1:  Okay.

17         MR. RUDOVSKY:  That would be the basis, but

18   let me clear, even if the Court disagrees with that,

19   the basic doctrine under the FTCA we have, we've got a

20   state law claim, we've got a Constitutional violation,

21   which removes under this Court's precedent, any

22   defense from the discretionary function, and we should

23   at least be able to go to discovery on the FTCA claim.

24         JUDGE #1:  So let's -- let's go back to the

25   discriminatory -- I'm sorry, to the discretionary

Page 34

1    function exception.  Say, on the basis of our case
2    law, we -- we are to agree that there's no requirement
3    that the right be clearly established and there --
4    there are scholars looking at that that have
5    distinguished that from a finding that the conduct be
6    clearly unconstitutional.  Do you see a meaningful
7    distinction there and --
8              MR. RUDOVSKY:  I -- I -- I --
9              JUDGE #1:  -- in -- in the qualified immunity
10    context or as applied here?
11              MR. RUDOVSKY:  -- I -- I don't and I think
12    one of the reasons that there cannot be is that the
13    Supreme Court has made absolutely clear that
14    Governmental entities are not entitled to qualified
15    immunity.  I mean, that's been the law for 40 years
16    since Owen versus City of Independence.  That's where
17    the Court said, "Sure, individual agents."  That's
18    why, you know, Agent Haugen on the Bivens claim, if we
19    got that far, could argue qualified immunity.  The
20    United States as an entity is not entitled to
21    qualified immunity.  Qualified immunity is to protect
22    the individual who's acting, right, from -- from --
23    from liability and -- and therefore, just as a
24    doctrinal matter, there's no basis for qualified
25    immunity.  What the Government tries to argue -- they

1   -- and they don't even push that argument really that

2   -- that somehow there's qualified immunity and even

3   if there is, our -- our claims are all clearly established

4   in the circuit, so it becomes irrelevant.  The -- the

5   Government says, "Well, yeah, we -- we -- we've got a

6   problem here," because really what they're arguing is

7   that an agent has to get affirmative proof from his

8   own expert, right, before he gets an indictment in a

9   case like this, where it may be complex."  That's not

10  our position; our position is just the opposite.  When

11  you're informed by an expert that you have nothing,

12  then you've got to go further.   There -- there's no -

13  - there's no requirement.  You've got probable cause

14  for that expert advice, but not in this kind of

15  misunderstanding.  So qualified immunity doctrinally

16  should not apply and even if it did, these Court's

17  decision in Halsey and Black made -- have made clear

18  that the Constitution is violated in this kind of

19  situation by his acts, malicious prosecution, search

20  without probable cause clearly established in this

21  Circuit.

22          JUDGE #1:  What -- what do we do just in

23  terms of the standard where the law is unsettled?  If

24  it's not until a given case that's presented to the

25  Court that there's a determination that it is, in

Page 36

1  fact, a Constitutional violation, how does that -- how

2  does that map onto the discretionary function

3  exception?

4          MR. RUDOVSKY:  So our view is, and I think

5  all the circuits agree on this, in saying that if

6  there is a violation -- if a court decides in a

7  particular case, even if they've never held it before

8  and it was not clearly established, we look at it for

9  the first time, what you did amounts to a 4th

10  Amendment violation, let -- let's take that case --

11  the specific agent has a qualified immunity defense

12  under a -- if it was 1983, for example, and we didn't

13  have a Bivens issue -- has a defense of qualified

14  immunity, the municipality that, right, is sued as

15  well, does not.  The United States under the Tort

16  Claims Act does not have it and -- and -- and that's

17  been the rule in every circuit.  The -- no -- and, in

18  fact, you know, the -- the -- the 11th Circuit and 7th

19  Circuit don't go up on qualified immunity, they go up

20  on a different kind of reading of the -- of the

21  statute.  No circuit has suggested or held of the 11

22  circuits that qualified immunity is a defense to a

23  Tort Claims Act.  If a court decides it was a

24  constitutional violation, the Government loses the

25  discretionary function defense.

1          JUDGE #1:  Fair enough, but the -- the

2     concept of what's clearly established presumably would

3     carry over if there were requirement in this context,

4     in the -- in the FTCA context that the right be

5     clearly established.

6          MR. RUDOVSKY:  But only if -- if you grafted

7     on qualified immunity to this doctrine that where

8     there's a Constitutional violation, there's no

9     discretionary function defense.

10          JUDGE #2:  What's weird is that the Supreme

11    Court has used some language about specific directives

12    in Gaubert and in Berkowitz, so it's -- it's not

13    out of nowhere that the -- the court has this idea

14    where it's looking for something that's specific or

15    clear.

16          MR. RUDOVSKY:  Right, and -- and -- and --

17    and I understand that in -- in that context.  There's

18    -- there's got to be a mandatory principle, right?  A

19    statute can do it, regulation can do it, a policy can

20    do it, the Constitution can do it.

21          JUDGE #2:  Right.

22          MR. RUDOVSKY:  The 4th Amendment says no

23    unreasonable searches, no searches without warrant, so

24    on and so forth.  There's a specific the Fourth Amendment's

25    been interpreted to that say you can't

1   maliciously prosecute somebody.  You have to have a

2   cause of action.  Our point is in any specific case --

3   in any specific case, if a court finds that

4   Constitutional violation after going through all the

5   facts in the case, even if they haven't addressed it

6   before, there's no discretionary function defense.

7   Our basic point in this case is it doesn't matter.

8   Even if you went that far, every right we argue here -

9   - I -- I understand the Court's problem with -- with

10  the 5th Amendment claim on racial discrimination, but

11  every other of the 4th Amendment rights that we argue

12  here have been clearly established for years in this

13  Circuit and the United States Supreme Court.  So it's

14  -- it's a -- it's -- in a sense, it's a non-issue.

15  When Judge Surrick said it's got to be clearly

16  established, he didn't even wrestle with all your

17  Court's cases, which -- which -- which made it clear

18  that it was.  So all we ask the Court to do is apply

19  this Court's precedent.  That's -- that's all we're

20  asking the Court to do on the FTCA.  I understand on

21  Bivens, room for disagreement as to whether we're in

22  the heartland or whether we're just a little bit -- we

23  don't have a -- a client named Bivens, but we think

24  the facts are -- are very similar.  I -- I know I've

25  run over my time.  I know I've tested the patience of the

1  Court. If I could just have those two minutes for rebuttal.

2         JUDGE #1:  Indeed.  Thank you.  We'll hear

3  from the Government.

4         MR. OVERVOLD:  Good morning, Your Honors.

5  May it please the Court, Leif Overvold with the

6  Department of Justice on behalf of the Appellees.

7         JUDGE #2:  How does the agent pronounce the

8  name?  Haugen, Haugen?

9         MR. OVERVOLD:  Haugen.

10         JUDGE #2:  Haugen.

11         MR. OVERVOLD:  Yes, Your Honor.  Thank you.

12   I -- I'd like to start where I think the -- my

13  colleague's argument ended with the discretionary

14  function exception and particularly, Judge Bibas

15  with what your question about the Court's -- the

16  Supreme Court's case law about the specificity of the

17  directive that the Court has used, even in the

18  statutory context to identify the types of legal

19  requirements that cabin the discretion that

20  might otherwise be available given the nature of the

21  actions at issue.  The Supreme Court's tests in both

22  Berkowitz and Gaubert, which this Court has recognized

23  in Fisher Brothers and numerous other cases

24  since then, requires that there be a specific

25  mandatory directive.

1          JUDGE #1:  But as soon as the Court has made

2     the determination that -- that conduct as pleaded

3     would constitute a Constitutional violation.  Surely

4     the Government agrees that it's mandatory that that

5     not be violated.

6          MR. OVERVOLD:  We certainly don't take issue

7     with the mandatory component.  The -- the difficulty

8     is that it -- to satisfy the specificity requirement,

9     the legal requirement must specifically prescribe a

10    course of conduct in the case before it.  And

11    determining whether a given factual pattern meets

12    probable cause, that is the sort of thing in which

13    discretion inherently exists.  I mean, this Court

14    concluded that in Pooler.  The D.C. Circuit in Gray

15    has also articulated the reasons why that's so

16    and concluding that just because it's the -- a

17    Constitutional violation is alleged, the elements of

18    the Constitutional 4th Amendment claim here and the

19    malicious prosecution claim are identical.  I mean,

20    it's the lack of probable cause and malice.

21          JUDGE #1:  So is it the Government's position

22    that any time there's a probable cause determination

23    involved that regardless whether there is a

24    Constitutional violation or not, the discretionary

25    function exception applies simply because probable

1   cause is part of the analysis?

2           MR. OVERVOLD:  No, Your Honor.  Our position

3   is that the Constitutional requirement, just as a

4   statutory requirement, has to specifically prescribe a

5   course of conduct and to conclude that a specific

6   course of conduct is prescribed in the face of a given

7   factual pattern would overturn Pooler, which was a

8   malicious prosecution case, which the Court concluded

9   was clearly subject to the discretionary function

10  exception, both the sort of activities in determining

11  what sort of investigation to conduct and then the --

12  the decision to submit that information to prosecuting

13  authorities as the basis for an indictment.

14          JUDGE #1:  But this is based on fabrication

15  of evidence.  That's the -- the essential problem here

16  that distinguishes it from your normal malicious

17  prosecution case, isn't it?  And how can fabrication

18  of evidence be anything but a Constitutional

19  violation?

20          MR. OVERVOLD:  Well, if you look at the

21  actual factual allegations of the complaint, Your Honor,

22  this is much closer to a malicious prosecution case.

23  The supposed fabrication of evidence is coming to a

24  judgement that the Plaintiff's communications were

25  unlawful rather than lawful and presenting that

Page 42

1   assessment to --

2          JUDGE #1:  No, they made up -- they made --

3   he made up stuff.  That's very different from your

4   standard malicious prosecution case.

5          MR. OVERVOLD:  Your Honor, there's not an

6   allegation in the complaint of any particular factual

7   statement that was made up.  I -- it's -- there are certain

8   allegations that exculpatory evidence was provided at

9   some point without any real specificity of in what

10  manner or when it was provided and the -- the agent,

11  nonetheless, with prosecution -- prosecutors presented

12  the -- this case to a grand jury.

13         JUDGE #1:  Well, they specifically plead that

14  the special agent was advised by the inventor that

15  these emails did not relate to this device, that it

16  was a different device.  And --

17         MR. OVERVOLD:  Well, even if --

18         JUDGE #1:  -- in -- in light of that, if --

19  if we -- if we do accept the -- the inference that can

20  be drawn to -- for sequencing purposes, that he was

21  advised of that before making statements that went

22  into a search warrant or went in front of the grand

23  jury, why isn't that a -- a specific false statement?

24         MR. OVERVOLD:  Well even as to that

25  allegation, Your Honor.  I mean, there's no -- there's

Page 43

1   no allegation in the Complaint that Special Agent

2   Haugen said that the inventor advised him differently

3   and if you look at the Complaint, it's -- it's in the

4   allegations that Professor Xi initially purchased this

5   technology from a company owned by one of the

6   inventors of the pocket heater, only to have another

7   company assert ownership, require him to sign an NDA

8   as a condition of leasing, so in the light of the

9   allegations of the Complaint, that's much more the

10  sort of conflicting inferences, even if you accept the

11  inference that it was presented to the agent before

12  the indictment, it's the sort of conflicting

13  inferences that the probable cause standard does not

14  require an agent to resolve correctly to rule out sort

15  of an innocent explanation for suspicious facts.

16          JUDGE #1:  At -- at the very least, shouldn't

17  this be something that maybe the District Court looks

18  at in the first instance?  I mean, the District Court

19  here required there to be clearly established law and

20  if we don't believe that that's correct, then

21  shouldn't you make this argument in the first

22  instance to the -- to the District Court as to

23  discretionary function as to these -- all of these

24  specific allegations?

25          MR. OVERVOLD:  Well, the District Court

Page 44

1    concluded entirely sort of consistent with this
2    Court's case law that the discretionary function
3    analysis looks to the nature of the actions.  They
4    have not argued that the nature of the actions here
5    are different from those at issue in Pooler.  It does
6    not sort of rely on the subjective intent of the
7    person exercising discretion and in looking for the
8    sort of specific mandatory directive that the Supreme
9    Court has required, in -- in the -- my colleague's
10   Reply Brief, I mean, the -- what they point to in
11   terms of their argument as to why it's sufficiently
12   specific is their briefing on the clearly established
13   Constitutional violation argument.  They are relying
14   on those arguments for the -- the claim that they've
15   alleged a sufficiently specific directive.  So it's
16   entirely natural, consistent with the -- the Court's
17   decision in Bryan, for the District Court to look
18   to the same -- same standard.  So we're -- we're not
19   arguing that the standards are identical, but there's
20   certainly no error when there's no other basis to
21   conclude that the Constitution provides a sufficiently
22   specific directive to look to that clearly established
23   standard in this case given the sort of that's the
24   basis by which they've argued -- they've alleged a
25   sufficiently specific directive.

1          JUDGE #1:  You -- you seem to be reverting to

2     the -- the concept of clearly established in the

3     qualified immunity context, that is -- that is

4     sufficiently specific and mandatory that an agent

5     would know ahead of time, but the argument that seems

6     to be put forth by the Plaintiff is that here we're

7     talking about just the finding of a Constitutional

8     violation and it doesn't matter whether it's there's

9     advanced notice to a reasonable officer or not, that

10    we have different concerns when it comes to the

11    discretionary function exception and -- and narrow

12    interpretation of exceptions to the waiver of

13    sovereign immunity in the False Tort Claims Act.

14         MR. OVERVOLD:  Well, we agree, I mean, it's

15    a different sort of standard when you're applying the

16    express discretionary function exception in the

17    context of a waiver of sovereign immunity.  I -- that

18    doesn't sort of provide a basis for reading in a

19    Constitutional exception to the discretionary function

20    exception's analysis that is not there in the text and

21    I -- I think the 11th Circuit's decision in Shivers

22    does note that.  I mean, I -- as a matter of just

23    textual analysis, the notion that you can dispense

24    with the Berkowitz/Gaubert lbert inquiry whenever you've

25    alleged a constitutional violation does not track the

1 text and the way the Supreme Court has indicated that

2 text should be --

3             JUDGE #2:  The text --

4             MR. OVERVOLD:  -- interpreted.

5             JUDGE #2:  -- you might have a point on, but

6 I think Mr. Rudovsky has a strong point about the way

7 the Supreme Court has been applying this.  In cases

8 like Gaubert and Berkowitz, it hasn't been looking

9 function by function, it's been looking act by act and

10 so, if that's the case, then the 7th and 11th Circuits

11 need to take it up with the Supreme Court.

12             MR. OVERVOLD:  Well, I -- in my

13 the 7th and 11th Circuit do look at the specific

14 natures of the acts alleged.  I mean, in the 7th

15 Circuit case, it was a malicious prosecution

16 allegation and they concluded the nature of those

17 actions consistent with the Court's previous case law

18 was that those were discretionary.  I believe the 11th

19 Circuit --

20             JUDGE #2:  But can it be just -- how can an

21 act be within discretion if the act is

22 unconstitutional.  The -- the logic of the statute --

23 the -- when you look at, you know, cases like

24 Berkowitz and Gaubert, the logic of treating statutes

25 and regs, like we -- we got to look for clear

Page 47

1   things is, well, in that situation maybe it was

2   delegated to the agency if it wasn't clear, but

3   there's no way in which an unclear Constitutional

4   provision delegates any power to an agency.

5           MR. OVERVOLD:  Well, the indictment decisions

6   -- the sort of -- the actions underlying a malicious

7   prosecution claim, the decision whether to take

8   certain action in enforcing the laws of the United

9   States, those are delegated both Constitutionally and

10  statutorily to the Executive Branch.  I mean, that's

11  the Gray sort of articulates why -- as -- absent the

12  sort of Constitutional allegations.  That's why this

13  Court and others have held that those malicious

14  prosecution claims are generally subject to the --

15          JUDGE #2:  Well, but --

16          MR. OVERVOLD:  -- discretionary function

17  exception.

18          JUDGE #2:  -- let's say you have some kind of

19  selective prosecution violation of, you know, the 5th

20  Amendment or something like that, that's not

21  delegated.  The ability to engage in selective

22  prosecution is not delegated to a prosecutor.

23          MR. OVERVOLD:  It's certainly possible if

24  the nature of the actions were different, if they were

25  challenging, sort of not a particular decision to go

1    or not go forward with an indictment, that might

2    change the -- the discretionary function analysis.  If

3    the alleged Constitutional violation was clearly

4    established, that again might cabin the

5    discretion similar to the way it does in the Berkowitz

6    or Gaubert context, but what you can't do, I would

7    submit, is that accepting the general -- the --

8    the probable cause standard is obviously

9    Constitutionally grounded, that in any case a Court

10    determines it was not met in a particular case, you

11    have essentially gutted Pooler and the cases Pooler

12    reflects that malicious prosecution is sort of the

13    quintessentially discretionary actions that the -- the

14    exception does protect.

15             JUDGE #1:  I'm confused about your -- your

16    reliance on Pooler because we -- we said there if the

17    complaint were that the agents of the government in

18    the course of investigation had violated

19    Constitutional rights or federal statutes, the outcome

20    would be different since federal officials do not

21    possess discretion to commit such violations, but when

22    the sole complaint is -- is here -- as here to the

23    quality of the investigation as judged by its outcome,

24    the discretionary function should and, we hold, does

25    apply.  How does Pooler help you?

1          MR. OVERVOLD:  So Pooler, in talking about

2    the types of Constitutional allegations that might not

3    be sufficient, mentions specifically unlawful

4    searches, which are unlikely to be covered by the

5    discretionary function exception in the first place --

6          JUDGE #1:  Well, there's a difference in

7    obtaining an unlawful search on someone, you know,

8    lacking probable cause or something, and a purposeful,

9    you know, omission of information or making up

10   information.  It's -- this -- this is of a different

11   character from a -- the quality of the investigation

12   being poor.

13         MR. OVERVOLD:  There are certainly -- I mean,

14   Pooler was before --

15         JUDGE #1:  But there again, shouldn't we have

16   the District Court analyze whether it's just the

17   quality of the investigation and get further into the

18   weeds of this --

19         MR. OVERVOLD:  Well, I think the District --

20         JUDGE #1:  -- because it's a matter of -- of

21   -- matter of degree.

22         MR. OVERVOLD:  -- I think the District Court

23   did in determining that the -- they did not state a

24   clearly established Constitutional violation here, did

25   -- there are violations that go beyond the quality of

1   the investigation.  The 1st Circuit's decision in

2   Limone involves actual allegations of fabricated

3   evidence to sort of frame the -- the Plaintiff in that

4   case which were proven.  That -- those, both in the

5   nature of the actions involved and the clarity with

6   which they -- they violated Constitutional standard,

7   that might get you out of the discretionary function

8   exception.  The other point I would make on Pooler is

9   that since Pooler, the Supreme Court in Gaubert has

10  made quite clear the inquiry is the nature of the

11  actions, not the subjective intent of the decision-

12  maker exercising discretion.  Having it turn on sort

13  of whether it's a garden variety malicious prosecution

14  claim versus a Constitutional claim flips that

15  inquiry.  I mean, it again reads out the Gaubert

16  standard.

17          JUDGE #1:  But does -- does this just boil

18  down to the -- the sufficiency of -- of the pleading

19  here?

20          MR. OVERVOLD:  Well, certainly as in Karkalas,

21  I mean, if this Court concludes that they have not

22  stated a Constitutional violation, which we submit

23  they have not, it need not decide how the --

24          JUDGE #2:  Well, let me ask you.  Mr.

25  Rudovsky argued with some force that if we put

Page 51

1    Paragraphs 3, 53, and 55(A) together, we have the

2    inventor of the pocket heater telling Special Agent

3    Haugen that this is something completely different and

4    3 and 53 tell us that those statements were made to

5    him before he went ahead and said the contrary.  So

6    how is that not specific enough?  What more does he

7    need to plead?

8              MR. OVERVOLD:  Well, even if you stitch

9    together the -- the Complaint -- the allegations that

10   way to get the sort of timing assertion, it -- it

11   still is the sort of conflicting inference that it

12   doesn't give rise to a Constitutional violation at the

13   probable cause stage.  Again, in the context of we

14   know from the allegations that Professor Xi that

15   initially purchased this technology from one company

16   owned by one inventor, another company, presumably

17   with some other connection to the -- the technology,

18   then asserted ownership and required him to sign an

19   NDA.  The fact that one inventor in that context is

20   saying, "This is not the -- one of the emails is not

21   concerning this technology," that does not sort of

22   give rise to an inference that in nonetheless

23   proceeding with the indictment the agent

24   intentionally, knowingly, or recklessly provided a

25   false statement.

Page 52

1          JUDGE #1:  Again, then I say, well, let's let

2     the District Court sort -- sort this out.

3          MR. OVERVOLD:  Well, Your Honor, I -- the

4     District Court erred in sort of using the clearly

5     established violation only if you -- not -- I -- I

6     apologize.  We don't think it erred in using that

7     formulation when that's the only articulation the

8     other side has given of how they've alleged a

9     sufficiently specific directive; otherwise, you're

10    reading a Constitutional exception into the

11    discretionary function exception absent any textual

12    basis to do that, absent even -- even putting the

13    Constitutional requirement to the same standard that a

14    statutory violation --

15          JUDGE #1:  Berkowitz says there has to be a

16    permissible exercise of policy judgement.  If there's

17    -- if -- if -- if what is pleaded tracks what has been

18    held to be a standard type of Constitutional violation

19    for purposes of -- of malicious prosecution, then how

20    -- how can it be a permissible exercise of policy

21    judgement?  Why shouldn't we be at the Motion to

22    Dismiss stage certainly, and the way we're supposed to

23    draw inferences, concluding that that is sufficiently

24    -- sufficiently pleaded as a run-of-the-mill violation

25    and -- and the discretionary function exception

1  therefore can't preclude it from moving forward.

2         MR. OVERVOLD:  Well, Gaubert makes clear that

3  again, the subjective intent of the decision-maker is

4  not the basis on which the Court determines whether or

5  not judgement has been permissible -- the -- the

6  judgement is permissible in a particular case.  I see

7  that -- I would add that -- this Court's decision in Baer

8  in particular, I think, also articulates well that

9  even a -- and I -- I believe it's a regulatory

10  standard there, but an allegation that the discretion

11  was impermissibly exercised because it was in

12  violation of some regulatory requirement not to give

13  preferential treatment, that doesn't sort of get you

14  out of the Gaubert inquiry when the nature of the

15  actions otherwise don't -- are -- are discretionary.

16         JUDGE #1:  Okay.

17         JUDGE #2:  That's it.

18         JUDGE #1:  All right.  Thank you.

19         MR. OVERVOLD:  Thank you.

20         JUDGE #1:  Mr. Rudovsky?

21         MR. RUDOVSKY:  I think the last thing that

22  the government argued makes our point.  On their

23  reading of the Complaint, there are conflicting

24  inferences that you can draw as to what Agent Haugen

25  did.  On a Motion to Dismiss when there are

1    conflicting inferences, this Court is clear, the case

2    must go on to discovery.  It will be reviewed again in

3    Summary Judgement, a jury can make a decision.  If

4    they want to argue that Agent Haugen was just

5    negligent at some point and didn't deliberately violate

6    Professor Xi's rights, they're free to argue that.

7    They can argue it at Summary Judgement, they can argue

8    it to the jury.  The point and -- and -- and I think

9    you all made it -- is that -- and I'll -- I'll -- let

10   me -- let me just read from Owens versus City of

11   Independence, the case that rejected qualified

12   immunity for government entities, as to the question

13   of whether Constitutional dictates are mandatory or

14   not compared to statutes, regulations -- even more

15   than statutes and regulations.  They said

16   Constitutional dictates -- and I quote -- "are

17   absolute and imperative."  The 4th Amendment, once you

18   define it, is absolute imperative.  Sure, there are

19   exceptions, but you reach a -- a decision, the -- the

20   -- and -- and so much water has passed under the

21   bridge since Pooler and Berkowitz -- this Court has

22   said in -- in the 1983 context, which is the same as

23   to the Constitutional violations, malicious

24   prosecution is a 4th Amendment violation,

25   falsification of evidence is both a 4th and 5th

Page 55

1   Amendment due process violation.  They've made that

2   clear.  The -- the -- even under a clearly established

3   mandatory standard, we win -- and -- and -- and

4   that's why, Judge Rendell, I -- I -- I resist -- I

5   push back on the notion for remand.  We waited for two

6   and a half years for Judge Surrick to decide this

7   case.  It took a long time.  He had it -- I think he

8   made a -- two fundamental errors in misreading the

9   Complaint and application of the law.  Based on

10  clearly established law in this Court and the Supreme

11  Court, this Court should remand, not for

12  reconsideration on a Motion to Dismiss, but to go

13  ahead with discovery, let the government make these

14  arguments, if they can, at Summary Judgement.  That --

15          JUDGE #1:  Mr. Rudovsky, to -- to clarify --

16  for the purposes of the Federal Tort Claims Act, if we

17  were to agree with you as to the sufficiency of the

18  pleading for a malicious prosecution claim that would

19  negate the discretionary function exception, is there

20  any need for us to reach your claims of an equal

21  protection violation?

22          MR. RUDOVSKY:  I -- I -- I think you have to

23  address them because we -- we -- we -- we stand by

24  them.  I -- I think we've got that claim, but I've

25  made clear that even if we only succeed on malicious

Page 56

1    prosecution, falsification of evidence, and a search,

2    right, without probable cause, any one of them defeats

3    the discretionary function as to those claims.  So

4    each claim stands on its own.  If you think that we

5    haven't pled enough for 5th Amendment racial/ethnic

6    discrimination claim, you -- you could certainly

7    affirm dismissal of that, but it still leaves the

8    others standing and they operate to defeat the

9    discretionary function, if I understand your question.

10            JUDGE #1:  Well, the -- the nature of the

11   claims you've brought in Counts 4 through, I guess, 9

12   we're dealing with, none seem to be specific to race

13   or ethnic discrimination.

14            MR. RUDOVSKY:  I -- I -- I understand the

15   Court's point about that.  I -- I -- I think given the

16   way we -- we pled it both in the factual pleadings and

17   then in the counts, there's sufficient plausibility

18   here that there's an independent 5th Amendment claim.

19   I -- I understand the Court's feeling that where's the

20   evidence for that.  I -- I think we have enough for an

21   inference, but it's --

22            JUDGE #1:  I understand how the independent

23   claim might inform a Bivens claim.  I guess I'm trying

24   to understand for purposes of the Federal Tort Claims

25   Act --

1          MR. RUDOVSKY:  Right, and --

2          JUDGE #1:  -- what relevance it has.

3          MR. RUDOVSKY:  -- right, and -- and -- right

4    -- right, and -- and that's right and then, but if --

5    I may be misunderstanding your question -- if you

6    decide that there's not sufficient evidence for a

7    freestanding 5th Amendment race/ethnic discrimination

8    claim, that leaves the Court with consideration of

9    malicious prosecution, falsification of evidence, and

10   the 4th Amendment search without probable cause -- all

11   of those are clearly established, all of those would

12   operate to defeat the discretionary function defense

13   as to those three claims.

14          JUDGE #1:  Yeah.

15          MR. RUDOVSKY:  That -- that's my point.

16          JUDGE #1:  The point is that it's not pled as

17   a Federal Tort Claim Act, it's pled assuming a Bivens

18   --

19          JUDGE #2:  (Cross talk).

20          JUDGE #1:  -- it -- it's -- it's only -- the

21   only purpose, in other words, the only relevance for

22   purposes of the Federal Tort Claims Act is as it

23   relates to discretionary function exception; is that

24   right?

25          MR. RUDOVSKY:  Exactly.  It -- it -- it --

Page 58

1   that's right.  It -- it -- it operates to defeat the

2   discretionary function, which is exactly what Pooler

3   says, all the other cases say, and which every

4   circuit, until the recent decisions, have -- have made

5   the same point.

6           JUDGE #1:  But it doesn't -- it doesn't

7   expressly underlie the claims of malicious

8   prosecution, invasion of privacy, emotional distress?

9           MR. RUDOVSKY:  That's right.  That's correct.

10          JUDGE #1:  Okay.  Thank you.

11          MR. RUDOVSKY:  Thank you.

12          JUDGE #1:  Okay.  Absolutely.  We thank

13  Counsel for excellent briefing and argument in this

14  case as well and could the Parties please also arrange

15  for a transcript to be produced in this case?  Again,

16  we'll put out an Order to that effect and we will take

17  the case under submission.  Thanks, all.

18          (Whereupon, at 11:51 a.m., the proceeding was

19          concluded.)

20

21

22

23

24

25

1               CERTIFICATE OF TRANSCRIBER

2          I, MITZI LIMBURG, do hereby certify that this

3    transcript was prepared from the digital audio

4    recording of the foregoing proceeding, that said

5    transcript is a true and accurate record of the

6    proceedings to the best of my knowledge, skills, and

7    ability; that I am neither counsel for, related to,

8    nor employed by any of the parties to the action in

9    which this was taken; and, further, that I am not a

10   relative or employee of any counsel or attorney

11   employed by the parties hereto, nor financially or

12   otherwise interested in the outcome of this action.

13

14

15                                        MITZI LIMBURG

16

17

18

19

20

21

22

23

24

25

| & | | | |
| --- | --- | --- | --- |
| **&** 2:4,18 3:4 | **11:51** 58:18 | **3** | **7** |
| **0** | **11th** 25:24 26:2 26:20,21 36:18 45:21 46:10,13 46:18 | **3** 13:16,25 15:1 15:14 51:1,4 | **7-6** 24:25 |
| **07102** 3:12 | | **30** 17:15,21 26:15 | **7146** 4:14 |
| **1** | **125** 2:12 3:17 | **353-2689** 4:25 | **718** 2:5,19 3:5 |
| **1** 6:2,13 7:10 8:1 8:11 9:16,18,20 10:2,4,19,21 11:7,19 12:4,8 12:10,13,16,18 12:23,25 13:4 14:6,23 15:4,6 15:21 16:20,25 17:5,13,16 18:2 18:5,20,23 19:9 19:15,24 20:2 21:4,12 23:22 26:3 28:3,8 29:16,21,25 30:3 30:5,20 31:16,22 32:2,5,8,21 33:10,16,24 34:9 35:22 37:1 39:2 40:1,21 41:14 42:2,13,18 43:16 45:1 48:15 49:6 49:15,20 50:17 52:1,15 53:16,18 53:20 55:15 56:10,22 57:2,14 57:16,20 58:6,10 58:12 | **14** 1:15 | **7th** 24:10 36:18 46:10,13,14 |
| | **18th** 2:12 3:17 | **39** 5:4 | **8** |
| | **19106** 1:21 2:6 2:20 3:6 | **4** | **80** 23:21 |
| | **1974** 24:13 | **4** 18:7 56:11 | **9** |
| | **1983** 36:12 54:22 | **40** 34:15 | **9** 56:11 |
| | **19th** 1:20 | **4th** 10:24 11:15 11:19 36:9 37:22 38:11 40:18 54:17,24 54:25 57:10 | **9/11** 10:6 |
| | **1st** 50:1 | | **925-4400** 2:8,22 3:8 |
| | **2** | | **931** 26:3 |
| | **2** 6:7,10 8:16 10:18,20 20:11 20:17 21:25 23:5 24:19 25:20 27:8,12,17 27:20 28:17 31:5,7 32:17 33:1 37:10,21 39:7,10 46:3,5 46:20 47:15,18 50:24 53:17 57:19 | **5** | **950** 4:6,22 |
| | | **5** 18:7 | **9th** 24:2,4 26:19 |
| | | **501** 2:5,19 3:5 | **a** |
| | | **519-7816** 3:20 | **a.m.** 1:16 58:18 |
| | | **53** 5:7 13:25 15:1,16 51:1,4 | **abbasi** 9:2,4 |
| | | **532-4631** 4:9 | **ability** 47:21 59:7 |
| | | **5469780** 1:22 | **able** 11:16 33:23 |
| | | **55** 14:8,9 15:7,13 15:17 16:1 51:1 | **absent** 47:11 52:11,12 |
| | | **5th** 19:7 38:10 47:19 54:25 56:5,18 57:7 | **absolute** 54:17 54:18 |
| **10** 11:11 | **20044** 4:15 | **6** | **absolutely** 15:24 16:24 17:11 28:7 34:13 58:12 |
| **10004** 2:13 3:18 | **202** 4:9,17,25 | **6** 5:3 18:8 | **abuse** 28:4,5 |
| **10:53** 1:16 | **2022** 1:15 | **601** 1:20 | **abused** 26:2,10 27:9 |
| **11** 36:21 | **20530** 4:7,23 | **616-4152** 4:17 | **abusively** 26:4 |
| | **21-2798** 1:8 | **6th** 8:14 | **accept** 29:3 42:19 43:10 |
| | **212** 2:15 3:20 | | |
| | **215** 2:8,22 3:8 | | |
| | **284-7305** 2:15 | | |
| | **2nd** 26:19 | | |

accepting 48:7
accountability 7:9
accountable 8:12
accurate 59:5
accused 23:16
aclu.org 2:14 3:19
act 6:21 12:21 13:3 18:6 19:11 19:20,21,23 20:20 21:6 22:13 23:24 26:8,10 36:16,23 45:13 46:9,9,21 46:21 55:16 56:25 57:17,22
acted 25:9 29:15 30:17
acting 22:14 25:9,19 34:22
action 6:23 25:6 38:2 47:8 59:8 59:12
actionable 6:21 6:23 25:5
actions 22:23 39:21 44:3,4 46:17 47:6,24 48:13 50:5,11 53:15
activities 41:10
activity 17:18
actor 23:8 31:22 33:14
acts 35:19 46:14

actual 41:21 50:2
add 53:7
address 12:25 22:3 55:23
addressed 16:21 38:5
adds 23:14
advanced 45:9
advice 35:14
advised 13:10,11 14:25 24:2 42:14,21 43:2
affect 9:6
affidavit 12:1
affirm 56:7
affirmative 35:7
agency 22:14,25 25:6 33:13 47:2 47:4
agent 1:10 6:3 7:22 10:8,16 11:15 13:10,17 14:3,10,17 16:2 16:17 17:18,22 25:4,7,9,9,19 27:4,5 28:23 29:2,5,8 30:16 31:17 32:10,12 32:14,16,18,20 34:18 35:7 36:11 39:7 42:10,14 43:1,11 43:14 45:4 51:2 51:23 53:24 54:4
agent's 16:15

agents 22:10,11 22:22 23:3 34:17 48:17
agorski 2:14
agree 7:12 8:25 22:8 26:25,25 34:2 36:5 45:14 55:17
agrees 40:4
ahead 15:11 45:5 51:5 55:13
al 1:5,11
allegation 29:3,9 31:16 42:6,25 43:1 46:16 53:10
allegations 6:17 9:13,19 13:8 25:11 32:11 33:13 41:21 42:8 43:4,9,24 47:12 49:2 50:2 51:9,14
alleged 8:21 18:13,25 40:17 44:15,24 45:25 46:14 48:3 52:8
allegedly 14:16
alleges 15:6
allow 8:23 9:5
amended 6:17 24:13
amendment 10:24 11:15,19 19:7 36:10 37:22 38:10,11 40:18 47:20 54:17,24 55:1

56:5,18 57:7,10
amendment's 37:24
american 2:11 3:16 31:15
americans 32:15
amicus 31:12
amounts 36:9
analysis 41:1 44:3 45:20,23 48:2
analyze 17:5 18:10,14 27:1 49:16
andrew 1:10 6:3
animus 31:19
ann 1:17
answer 28:3,14
anyway 32:13
apologize 52:6
appeal 6:14
appeals 1:1,2 7:14
appearing 21:7
appellants 1:6 2:2 5:3,7 6:5
appellate 4:5
appellees 1:12 4:2 5:4 39:6
application 55:9
applied 34:10
applies 40:25
apply 9:4 10:2 17:2,7,8 35:16 38:18 48:25
applying 45:15 46:7

**appreciate** 10:21
**arch** 2:5,19 3:5
**arguably** 19:10
**argue** 9:5 17:8
  18:17 22:7
  27:25 34:19,25
  38:8,11 54:4,6,7
  54:7
**argued** 44:4,24
  50:25 53:22
**argues** 7:23 9:3
**arguing** 7:12
  10:14 19:20
  24:9 35:6 44:19
**argument** 17:12
  25:21 35:1
  39:13 43:21
  44:11,13 45:5
  58:13
**arguments** 5:2
  7:2 25:3,12
  44:14 55:14
**arrange** 58:14
**arrest** 8:15
  21:20 30:15
**articulated**
  40:15
**articulates** 47:11
  53:8
**articulation** 52:7
**ashley** 2:10
**asian** 32:15
**asked** 21:5
**asking** 38:20
**assert** 43:7
**asserted** 51:18
**assertion** 51:10

**assessment** 42:1
**associated** 33:14
**assume** 19:17
**assuming** 17:7
  17:17 27:4
  57:17
**attorney** 14:4
  23:7 59:10
**attorney's** 21:7
  21:21
**audio** 59:3
**authorities**
  41:13
**available** 39:20
**avenue** 4:6,22
  9:1

**b**

**back** 16:20
  18:10 20:21
  33:24 55:5
**baer** 53:7
**banc** 25:1
**bar** 24:17
**barred** 6:22 7:17
**based** 6:16,20
  9:17 10:16
  11:14,14,24 12:1
  12:12 14:14
  21:23 23:22
  32:10 41:14
  55:9
**basic** 6:16 17:12
  33:19 38:7
**basically** 23:17
**basis** 19:23
  20:19 33:17
  34:1,24 41:13

44:20,24 45:18
  52:12 53:4
**beginning** 28:11
**behalf** 2:2 4:2
  39:6
**believe** 18:23
  43:20 46:18
  53:9
**ben** 4:14
**berkowitz** 37:12
  39:22 45:24
  46:8,24 48:5
  52:15 54:21
**best** 25:21 59:6
**better** 12:25
**beyond** 8:20
  14:7 49:25
**bias** 6:20 10:16
  20:10 29:15
  33:6,13
**bibas** 1:18 8:25
  20:15 39:14
**bit** 38:22
**bivens** 6:24 7:3
  7:13,17,18,20,21
  7:23 8:3,11,13
  8:15,18,23 9:1,1
  9:7,11 10:13
  12:10 13:2,2
  34:18 36:13
  38:21,23 56:23
  57:17
**black** 19:3,7
  35:17
**boil** 50:17
**boule** 8:16
**box** 4:14

**branch** 4:13
  47:10
**branded** 7:5
**bridge** 9:20
  54:21
**brief** 44:10
**briefing** 44:12
  58:13
**briefs** 31:12
**broad** 2:12 3:17
**brothers** 39:23
**brought** 56:11
**bryan** 44:17

**c**

**c** 2:1 3:1 4:1 5:1
  6:1
**cabin** 39:19 48:4
**call** 6:2
**carry** 37:3
**carved** 26:11
**case** 1:8 6:2,5
  7:9,11,22 8:14
  9:6,7 10:23,24
  11:13 16:5,5
  20:25 22:11
  24:9,25 25:19
  26:22 28:10,16
  33:12 34:1 35:9
  35:24 36:7,10
  38:2,3,5,7 39:16
  40:10 41:8,17,22
  42:4,12 44:2,23
  46:10,15,17 48:9
  48:10 50:4 53:6
  54:1,11 55:7
  58:14,15,17

**cases** 8:23 26:17
  31:13,17 38:17
  39:23 46:7,23
  48:11 58:3
**categorically**
  25:23
**category** 18:6
**causal** 22:10
  23:3
**causation** 21:24
**cause** 6:19 9:12
  9:15 11:18
  19:13 20:9 21:8
  21:14 22:2,23
  33:9 35:13,20
  38:2 40:12,20,22
  41:1 43:13 48:8
  49:8 51:13 56:2
  57:10
**caused** 23:18
**causes** 21:25
**caution** 12:16
**center** 3:11
**certain** 17:19
  42:7 47:8
**certainly** 8:8
  28:1 40:6 44:20
  47:23 49:13
  50:20 52:22
  56:6
**certificate** 59:1
**certify** 59:2
**chair** 7:6
**challenging**
  22:22 47:25
**change** 48:2
**character** 49:11

**cheryl** 1:17
**china** 7:5 10:11
  10:11 13:21
  14:17 16:19
  29:12
**chinese** 31:8,14
**circuit** 1:2 8:14
  21:1 24:2,4,10
  25:24 26:2,19,19
  26:19,21,22
  28:10,12 35:4,21
  36:17,18,19,21
  38:13 40:14
  46:13,15,19 58:4
**circuit's** 45:21
  50:1
**circuits** 17:20
  24:5 25:2 26:16
  36:5,22 46:10
**circumstantial**
  32:1,6 33:11
**cite** 31:24
**city** 21:3 27:23
  34:16 54:10
**civil** 2:11 3:16
  4:13,21
**claim** 7:13,17,19
  8:11,15,23 10:13
  12:11 16:17
  19:6,21 21:5
  33:20,23 34:18
  38:10 40:18,19
  44:14 47:7
  50:14,14 55:18
  55:24 56:4,6,18
  56:23,23 57:8,17
**claiming** 16:4

**claims** 6:21
  12:21 13:3
  16:23 17:6 18:2
  18:5,6,15,18,23
  18:24 19:10,20
  19:21,23 20:6,20
  22:13 23:24
  32:24 33:7,7
  35:3 36:16,23
  45:13 47:14
  55:16,20 56:3,11
  56:24 57:13,22
  58:7
**clarify** 55:15
**clarity** 50:5
**clause** 25:17
  26:12 27:9
**clear** 14:12 33:3
  33:10,18 34:13
  35:17 37:15
  38:17 46:25
  47:2 50:10 53:2
  54:1 55:2,25
**clearly** 13:17
  17:2 19:1 34:3,6
  35:3,20 36:8
  37:2,5 38:12,15
  41:9 43:19
  44:12,22 45:2
  48:3 49:24 52:4
  55:2,10 57:11
**client** 38:23
**close** 24:25
**closer** 41:22
**cloud** 7:7 23:21
**colleague's**
  39:13 44:9

**colleagues** 14:17
  16:19
**come** 19:16
  25:23
**comes** 20:21
  45:10
**coming** 41:23
**commit** 48:21
**communications**
  13:21 41:24
**company** 43:5,7
  51:15,16
**compared** 54:14
**comparing**
  16:13
**complaint** 6:17
  8:4 11:3,12 12:5
  13:13,16 14:24
  28:20 41:21
  42:6 43:1,3,9
  48:17,22 51:9
  53:23 55:9
**complete** 25:12
**completely**
  11:24 23:22
  26:14 51:3
**complex** 16:5,6
  35:9
**component** 40:7
**concede** 9:3
**concept** 37:2
  45:2
**concerning**
  11:13 51:21
**concerns** 13:7
  45:10
**conclude** 41:5
  44:21

concluded   40:14
41:8 44:1 46:16
58:19
concludes   50:21
concluding
40:16 52:23
condition   43:8
conduct   7:25
34:5 40:2,10
41:5,6,11
conducted   9:25
11:15
confidential
10:10 16:18
conflicting   43:10
43:12 51:11
53:23 54:1
confused   48:15
congress   24:13
connection
51:17
consequences
7:4
consideration
57:8
consistent   17:14
44:1,16 46:17
constitute   40:3
constitution
17:22 18:14
21:2 25:10 27:6
27:7,23 35:18
37:20 44:21
constitutional
17:9 18:12,18,21
18:24 19:22
20:24 24:5
25:15,22 26:24

27:24 28:5
33:20 36:1,24
37:8 38:4 40:3
40:17,18,24 41:3
41:18 44:13
45:7,19,25 47:3
47:12 48:3,19
49:2,24 50:6,14
50:22 51:12
52:10,13,18
54:13,16,23
constitutionally
47:9 48:9
construction
24:11 25:17
consult   16:8
cont   3:1 4:1
context   6:25
9:23 34:10 37:3
37:4,17 39:18
45:3,17 48:6
51:13,19 54:22
contexts   8:19
continued   29:6
30:10
contrary   51:5
contrast   13:11
cook   16:14
correct   16:23
17:10 43:20
58:9
correctly   43:14
counsel   3:3 5:3,4
5:7 58:13 59:7
59:10
count   11:11 18:7
18:7,8 22:1

counterintellig...
11:2
country   17:20
counts   56:11,17
county   19:4
course   32:2
40:10 41:5,6
48:18
court   1:1,2 6:4
6:15 7:8 8:17
9:1 10:12 11:11
11:12 13:2
17:15,19 18:11
19:2,7 20:12,13
20:18 21:2 24:3
26:15 28:11,15
28:16 31:1,1
33:18 34:13,17
35:25 36:6,23
37:11,13 38:3,13
38:18,20 39:1,5
39:17,22 40:1,13
41:8 43:17,18,22
43:25 44:9,17
46:1,7,11 47:13
48:9 49:16,22
50:9,21 52:2,4
53:4 54:1,21
55:10,11,11 57:8
court's   31:23
33:4,21 35:16
38:9,17,19 39:15
39:16,21 44:2,16
46:17 53:7
56:15,19
courts   7:14
cover   27:12

covered   49:4
credit   30:4,15
criminal   17:18
31:6
critical   13:19
cross   14:6 19:24
20:11 21:10
57:19
crossed   9:20

d

d   6:1
d.c.   4:7,15,23
26:18 40:14
damage   8:8 21:9
23:11,12,15
damages   23:14
date   1:15
david   2:3 6:4
deal   23:25
dealing   56:12
decide   8:18 23:3
50:23 55:6 57:6
decided   11:10,13
17:1 22:17
decides   36:6,23
decision   23:9
24:2 25:8 31:23
35:17 41:12
44:17 45:21
47:7,25 50:1,11
53:3,7 54:3,19
decisions   28:12
47:5 58:4
defamed   23:20
defeat   56:8
57:12 58:1

defeats 56:2
defendant 15:15
  22:23
defense 24:11
  33:22 36:11,13
  36:22,25 37:9
  38:6 57:12
define 54:18
degree 49:21
delegated 47:2,9
  47:21,22
delegates 47:4
deliberately 54:5
department 4:4
  4:12,20 7:6 39:6
destroy 22:19
detailed 14:8
  15:25
details 15:14,18
  31:2
determination
  35:25 40:2,22
determines
  48:10 53:4
determining
  40:11 41:10
  49:23
devastating 7:3
device 13:23
  14:21,22 42:15
  42:16
devices 13:24
dictates 54:13,16
difference 9:10
  24:20 27:21
  49:6
different 7:23,24
  7:25 10:6 11:4

11:10 13:24
  17:23 22:5,21
  26:12 32:19
  36:20 42:3,16
  44:5 45:10,15
  47:24 48:20
  49:10 51:3
differently 43:2
difficulty 40:7
digital 59:3
directive 39:17
  39:25 44:8,15,22
  44:25 52:9
directives 37:11
disagree 20:13
disagreement
  38:21
disagrees 33:18
discovery 21:15
  29:7 30:24
  33:23 54:2
  55:13
discretion 17:19
  18:13 22:17,17
  26:1,5,9 27:6,9
  27:19 28:4,6
  39:19 40:13
  44:7 46:21 48:5
  48:21 50:12
  53:10
discretionary
  6:22 17:1,6,8
  18:1,12 20:3,22
  21:1 24:6,11
  25:14,25 26:6
  27:5 33:22,25
  36:2,25 37:9
  38:6 39:13

40:24 41:9
  43:23 44:2
  45:11,16,19
  46:18 47:16
  48:2,13,24 49:5
  50:7 52:11,25
  53:15 55:19
  56:3,9 57:12,23
  58:2
discrimination
  28:19 31:25
  32:22 38:10
  56:6,13 57:7
discriminatory
  31:19 33:25
dismiss 6:15
  29:4 30:9 32:12
  52:22 53:25
  55:12
dismissal 56:7
dismissed 21:23
  31:13
dispense 45:23
disregarded
  15:16
dissent 26:21
distinction 34:7
distinguish 8:22
distinguished
  34:5
distinguishes
  24:7 33:12
  41:16
distinguishing
  22:5
distress 18:9
  58:8

district 6:14 7:8
  11:11,12 18:11
  20:12,13,18 31:1
  43:17,18,22,25
  44:17 49:16,19
  49:22 52:2,4
division 4:13,21
doctrinal 34:24
doctrinally
  35:15
doctrine 6:24
  33:19 37:7
doing 24:20
  29:13
draw 52:23
  53:24
drawn 42:20
drill 10:22
drudovsky 2:7
drugs 9:7
due 55:1
duty 26:6

e

e 2:1,1 3:1,1 4:1
  4:1,3,11 5:1 6:1
  6:1
easy 28:16 29:17
effect 58:16
egbert 8:16 9:2
  10:24
elements 40:17
email 13:21
emails 14:15
  16:11 28:25
  42:15 51:20
emergency
  22:15

emotional 8:8
  18:9 58:8
emphasis 12:21
employed 59:8
  59:11
employee 23:1
  26:4 59:10
en 25:1
ended 39:13
enforcing 47:8
engage 47:21
engaged 27:4
entire 10:25
entirely 44:1,16
entities 34:14
  54:12
entitled 34:14,20
entity 34:20
equal 55:20
equation 21:13
erred 52:4,6
error 44:20
errors 55:8
esquire 2:3,10
  2:17 3:2,10,15
  4:3,11,19
essential 41:15
essentially 9:20
  48:11
established 17:3
  19:2 34:3 35:3
  35:20 36:8 37:2
  37:5 38:12,16
  43:19 44:12,22
  45:2 48:4 49:24
  52:5 55:2,10
  57:11

et 1:5,11
ethnic 6:20
  10:16 20:10
  28:18 29:15
  33:6 56:5,13
  57:7
ethnicity 30:18
evidence 6:20
  12:6 16:16 19:5
  19:6,13,16 20:8
  21:22 32:1,6
  33:9,11 41:15,18
  41:23 42:8 50:3
  54:25 56:1,20
  57:6,9
exactly 9:10 25:6
  57:25 58:2
example 36:12
excellent 58:13
exception 6:22
  17:2 20:3 25:14
  26:1 34:1 36:3
  39:14 40:25
  41:10 45:11,16
  45:19 47:17
  48:14 49:5 50:8
  52:10,11,25
  55:19 57:23
exception's
  45:20
exceptions 45:12
  54:19
exculpatory 42:8
executive 47:10
exercise 52:16
  52:20
exercised 53:11

exercises 26:5
exercising 44:7
  50:12
exists 40:13
expert 16:9,9
  35:8,11,14
experts 16:8
explanation
  43:15
express 45:16
expressly 58:7
extent 23:10

f

f4th 26:3
fabricated 15:20
  50:2
fabrication 6:19
  7:12,15 8:5 19:5
  19:6,12,16 20:7
  41:14,17,23
face 41:6
facing 23:21
fact 8:13 15:16
  16:22 30:7 36:1
  36:18 51:19
factor 24:15
factors 9:4 22:5
facts 38:5,24
  43:15
factual 40:11
  41:7,21 42:6
  56:16
fair 37:1
fall 18:6
false 11:17 12:1
  12:5,9 14:3,9
  15:3,19 18:8

21:5,8 23:22
  42:23 45:13
  51:25
falsification 6:19
  12:6 33:8 54:25
  56:1 57:9
falsity 13:9
familiar 14:20
  14:21
family 6:6 7:4
  23:13
far 22:21 28:4,4
  34:19 38:8
fbi 6:3 14:3 16:2
  25:8 30:16
fear 7:8
federal 6:21
  12:21 13:3 18:6
  19:9,10,21,22,23
  26:23,23 48:19
  48:20 55:16
  56:24 57:17,22
feeling 56:19
feinberg 2:4,18
  3:2,4
fiduciary 28:10
field 11:1,1,7,10
fills 15:17
financially 59:11
find 13:13 15:10
  29:4
finding 34:5
  45:7
finds 38:3
fine 23:22
finish 20:15,17
first 6:16 13:15
  27:2,3 36:9

43:18,21 49:5
**fisa** 11:2,9,13,14
**fisher** 21:4,12
  22:1,3,6,10 23:2
  23:25,25 24:8,16
  24:25 25:3
  39:23
**fit** 7:21 8:2 26:7
**five** 9:3
**flips** 50:14
**floor** 1:20 2:12
  3:17
**focused** 13:7
**focusing** 26:8
**follow** 28:15
**food** 16:14
**footing** 26:13
**force** 50:25
**forced** 7:7
**foregoing** 59:4
**formulation**
  52:7
**forth** 10:11
  37:24 45:6
**forward** 8:24
  48:1 53:1
**found** 22:12
  24:10
**four** 22:5 28:25
**fourth** 37:24
**frame** 50:3
**framed** 19:19
**franklin** 4:14
**free** 54:6
**freestanding**
  19:6 57:7
**front** 42:22

**ftca** 7:2 24:1,13
  24:17 26:18,24
  27:1 33:19,23
  37:4 38:20
**function** 6:22
  17:1,6,8 18:12
  20:3,22 24:6,12
  25:14,25 26:6,11
  33:22 34:1 36:2
  36:25 37:9 38:6
  39:14 40:25
  41:9 43:23 44:2
  45:11,16,19 46:9
  46:9 47:16 48:2
  48:24 49:5 50:7
  52:11,25 55:19
  56:3,9 57:12,23
  58:2
**functions** 27:5
**fundamental**
  26:20 55:8
**further** 8:13
  24:3 27:1 35:12
  49:17 59:9

**g**

**g** 6:1
**gap** 33:5
**garden** 50:13
**gaubert** 37:12
  39:22 45:24
  46:8,24 48:6
  50:9,15 53:2,14
**general** 48:7
**generalized** 13:8
**generally** 47:14
**getting** 24:22

**give** 51:12,22
  53:12
**given** 10:9 35:24
  39:20 40:11
  41:6 44:23 52:8
  56:15
**gives** 29:16 30:6
**go** 8:19,24 27:1
  33:23,24 35:12
  36:19,19 47:25
  48:1 49:25 54:2
  55:12
**goes** 24:3
**going** 8:18 10:10
  17:7 21:17
  22:19 28:15
  30:11 38:4
**good** 25:2 26:21
  39:4
**gorski** 2:10
**government**
  7:23 9:3,9 10:14
  16:6,7 18:17
  20:21 22:7,25
  24:8,15 27:25
  29:13 31:9,9
  34:25 35:5
  36:24 39:3 40:4
  48:17 53:22
  54:12 55:13
**government's**
  40:21
**governmental**
  12:2 23:8 34:14
**grafted** 37:6
**grand** 11:17
  14:4 15:5 21:18
  22:24 23:5

42:12,22
**grant** 6:15 17:17
**granted** 6:13
**grapes** 22:16
**gravamen** 8:3
  12:4
**gray** 40:14 47:11
**grounded** 48:9
**grounds** 8:22
**guess** 56:11,23
**gun** 32:4
**gutted** 48:11

**h**

**h** 3:2
**hafetz** 3:10
**half** 55:6
**halsey** 19:3,8
  35:17
**hampered** 30:25
**happened** 7:25
  9:11,13 14:13
  21:18
**happens** 25:17
**hard** 15:25
**haugen** 1:11 6:3
  13:17 14:3,10,14
  14:17 15:15
  16:2,17 21:22,24
  22:23 31:17
  34:18 39:8,8,9
  39:10 43:2 51:3
  53:24 54:4
**head** 22:14 25:8
**health** 22:15
**hear** 39:2
**hearing** 1:14

**heartland** 7:21
  38:22
**heat** 16:14
**heater** 13:18,20
  13:22 14:12,14
  14:18,19,20 16:2
  16:12,13 28:24
  29:1 43:6 51:2
**held** 17:20,21,21
  19:7 36:7,21
  47:13 52:18
**help** 48:25
**hereto** 59:11
**hold** 48:24
**holds** 8:14
**home** 9:12
**honor** 39:11
  41:2,21 42:5,25
  52:3
**honorable** 1:17
  1:18,19
**honors** 39:4
**house** 8:9 11:24
  21:19 23:16
**huh** 27:17

**i**

**idea** 37:13
**identical** 40:19
  44:19
**identify** 39:18
**illegally** 14:16
**immunity** 34:9
  34:15,19,21,21
  34:25 35:2,15
  36:11,14,19,22
  37:7 45:3,13,17
  54:12

**imperative**
  54:17,18
**impermissibly**
  53:11
**implicate** 11:5
  16:11
**implicated** 11:3
**implications**
  8:21 9:24 32:23
**important** 24:7
  24:15
**inapposite** 22:9
**include** 24:13
**included** 14:10
**inconsistent**
  26:14
**increased** 23:11
**independence**
  21:3 27:24
  34:16 54:11
**independent**
  56:18,22
**indicated** 46:1
**indicted** 23:15
**indictment** 9:14
  11:16 12:1
  15:14 16:4
  21:19,23 23:18
  35:8 41:13
  43:12 47:5 48:1
  51:23
**indictments**
  31:14
**individual** 26:10
  34:17,22
**inducing** 24:21
**inference** 29:14
  29:17,17 30:6,10

30:13,17,20
  31:19 32:22
  42:19 43:11
  51:11,22 56:21
**inferences** 43:10
  43:13 52:23
  53:24 54:1
**inform** 56:23
**information**
  11:17,23,25 12:2
  12:5,9 13:9,17
  13:20 14:2,4,10
  15:2,3 16:18
  23:18,20,22
  29:12 31:2,8
  41:12 49:9,10
**informed** 14:11
  14:11,14,17
  28:23 35:11
**inherently** 40:13
**initially** 43:4
  51:15
**injury** 7:24
**innocent** 43:15
**inoperable** 24:18
**inquiry** 26:3
  45:24 50:10,15
  53:14
**instance** 43:18
  43:22
**instrument** 29:2
**intent** 44:6 50:11
  53:3
**intentional**
  23:25 24:12,14
  24:16,21,22
**intentionally**
  51:24

**interest** 20:8
**interested** 59:12
**interpretation**
  45:12
**interpreted**
  37:25 46:4
**intervening** 21:6
**invasion** 18:8
  19:11,15 58:8
**invented** 13:24
  14:19,22
**inventor** 13:18
  13:19 14:11,13
  14:25 16:2
  28:24 42:14
  43:2 51:2,16,19
**inventors** 43:6
**investigating**
  10:10 17:18
  29:11
**investigation**
  11:16 29:13
  41:11 48:18,23
  49:11,17 50:1
**involved** 9:6
  10:9 17:19
  31:17 40:23
  50:5
**involves** 50:2
**involving** 11:1
**iqbal** 13:6 28:20
  33:2
**irrelevant** 35:4
**issue** 9:8 11:10
  12:18 16:5,9
  23:9 30:12,13
  36:13 38:14
  39:21 40:6 44:5

**issues** 7:9 11:13
**items** 22:20

**j**

**jacobs** 8:14
**jersey** 3:12
**jfeinberg** 3:7
**job** 1:22
**jonathan** 3:2,10
**jonathan.hafetz**
  3:13
**judge** 6:2,7,10
  6:13 7:10 8:1,11
  8:16,25 9:16,18
  9:20 10:2,4,18
  10:19,20,21 11:7
  11:19 12:4,8,10
  12:13,16,18,23
  12:25 13:4,7
  14:1,6,23 15:4,6
  15:21 16:20,25
  16:25 17:1,5,13
  17:16 18:2,5,20
  18:23 19:9,15,24
  20:2,11,15,17
  21:4,12,25 23:5
  24:19 25:20
  27:8,12,17,20
  28:3,8,17 29:16
  29:21,25 30:3,5
  30:20 31:5,7,16
  31:22 32:2,5,8
  32:17,21 33:1,10
  33:16,24 34:9
  35:22 37:1,10,21
  38:15 39:2,7,10
  39:14 40:1,21
  41:14 42:2,13,18

43:16 45:1 46:3
  46:5,20 47:15,18
  48:15 49:6,15,20
  50:17,24 52:1,15
  53:16,17,18,20
  55:4,6,15 56:10
  56:22 57:2,14,16
  57:19,20 58:6,10
  58:12
**judged** 48:23
**judgement** 41:24
  52:16,21 53:5,6
  54:3,7 55:14
**judiciary** 9:5
**jury** 11:17 14:5
  15:5 21:18
  22:24 23:5
  30:13 42:12,23
  54:3,8
**justice** 4:4,12,20
  39:6

**k**

**kairys** 2:4,18 3:4
**karkalas** 50:20
**kind** 23:1 26:11
  29:13 35:14,18
  36:20 47:18
**knew** 13:12
  15:10,15 16:15
**know** 10:20
  15:10,19 22:15
  22:19 25:1,2
  28:8 30:15,16
  31:11 34:18
  36:18 38:24,25
  45:5 46:23
  47:19 49:7,9

51:14
**knowingly** 51:24
**knowledge** 13:8
  13:14 15:7,9
  59:6
**known** 13:12
  14:2 15:11,18
**knows** 32:10,12
**krause** 1:17
**krlawphila.com**
  2:7,21 3:7

**l**

**lab** 22:11 25:4
**label** 10:9,15
**lack** 20:19 40:20
**lacking** 49:8
**language** 17:23
  25:25 26:7,9
  27:14,14 37:11
**law** 17:2 20:5,5,6
  20:19 24:4,4
  27:2,4 33:20
  34:2,15 35:23
  39:16 43:19
  44:2 46:17 55:9
  55:10
**lawful** 41:25
**laws** 47:8
**lays** 14:9
**lbert** 45:24
**leader** 22:18
**leading** 16:9
**leasing** 43:8
**leaves** 56:7 57:8
**left** 16:16,19
  25:18 27:8 29:2
  29:8 30:9 32:10

**legal** 7:2 39:18
  40:9
**leif** 4:3 39:5
**leif.overvold2**
  4:8
**lens** 32:19
**levels** 22:9
**liability** 34:23
**liaison** 3:3
**liberties** 2:11
  3:16
**life** 8:4
**light** 18:9 21:5,8
  42:18 43:8
**lighter** 28:4
**limburg** 59:2,15
**limone** 50:2
**lin** 2:4,17,18 3:4
**link** 15:21
**little** 38:22
**live** 7:7
**location** 1:20
**logic** 46:22,24
**long** 55:7
**longer** 17:25
  21:1
**look** 7:21 9:10
  10:15 22:6
  25:24 27:2
  28:22 32:20
  36:8 41:20 43:3
  44:17,22 46:13
  46:23,25
**looked** 7:14 9:22
  14:15,15
**looking** 11:1
  32:14,19 34:4
  37:14 44:7 46:8

46:9
**looks** 10:23
43:17 44:3
**loses** 36:24
**lot** 31:1,2
**lower** 25:7

**m**

**m** 2:10,17
**majority** 17:20
26:16
**maker** 50:12
53:3
**making** 25:8
42:21 49:9
**malice** 40:20
**malicious** 6:18
7:11,15 8:5 18:7
19:4,11,17 20:7
32:24 33:8
35:19 40:19
41:8,16,22 42:4
46:15 47:6,13
48:12 50:13
52:19 54:23
55:18,25 57:9
58:7
**maliciously** 38:1
**mandatory**
17:22,25 21:2
27:15,25 28:1
37:18 39:25
40:4,7 44:8 45:4
54:13 55:3
**manner** 42:10
**map** 36:2
**marjorie** 1:19

**market** 1:20
22:20
**material** 10:10
**materially** 6:25
7:22
**matter** 25:16
34:24 38:7 45:8
45:22 49:20,21
**mean** 23:13 28:5
31:18 32:23
34:15 40:13,19
42:25 43:18
44:10 45:14,22
46:14 47:10
49:13 50:15,21
**meaningful** 34:6
**mechanism** 7:24
**meets** 15:22
40:11
**mentions** 49:3
**messing** 2:4,18
3:4
**met** 48:10
**microwave**
16:13
**mill** 10:24 52:24
**million** 23:22
**minority** 25:22
**minutes** 6:12
39:1
**misreading**
26:20 29:1 55:8
**mistaken** 16:10
**misunderstand...**
35:15 57:5
**mitzi** 59:2,15
**montgomery**
19:4

**months** 7:7
21:22
**morning** 39:4
**motion** 6:15 29:4
30:9 32:12
52:21 53:25
55:12
**motive** 29:9
**move** 12:24 13:3
**moving** 53:1
**multiple** 22:9
**municipality**
36:14
**myers** 28:13
**myles** 24:1,3,6,8

**n**

**n** 2:1 3:1 4:1 5:1
5:1 6:1
**name** 6:8 39:8
**named** 38:23
**narrow** 8:25
45:11
**national** 8:20 9:6
9:8,23 10:7,12
11:5,9
**nationality**
28:19
**nationally** 23:20
**natural** 44:16
**nature** 17:25
39:20 44:3,4
46:16 47:24
50:5,10 53:14
56:10
**natures** 46:14
**nda** 43:7 51:19

**need** 18:15,16
21:15 31:18
32:3,4 46:11
50:23 51:7
55:20
**negate** 55:19
**negligence** 24:14
30:12
**negligent** 22:12
22:12 25:5 54:5
**neither** 59:7
**never** 36:7
**new** 2:13,13 3:12
3:18,18 6:25
7:13,16,17,18
12:10
**newark** 3:11,12
**non** 38:14
**normal** 41:16
**northwest** 4:6,22
**note** 45:22
**notice** 22:6 45:9
**notion** 45:23
55:5
**number** 13:15
19:4 25:16
31:13
**numerous** 39:23

**o**

**o** 1:19 5:1 6:1
**observation** 7:1
**obtain** 11:16
**obtained** 15:9
**obtaining** 49:7
**obviously** 10:7
20:23 21:15
25:2 48:8

**office** 21:7,21
**officer** 45:9
**officers** 11:21,23
**officials** 12:3
  48:20
**okay** 13:4 17:13
  18:22 20:11
  33:16 53:16
  58:10,12
**omission** 49:9
**once** 16:15 29:8
  54:17
**opened** 13:5
**operate** 56:8
  57:12
**operates** 58:1
**operations** 10:7
**operative** 22:25
**opposed** 24:14
**opposite** 35:10
**order** 21:16 31:4
  58:16
**ought** 10:16 28:1
**outcome** 48:19
  48:23 59:12
**overruled** 9:1
**overturn** 41:7
**overvold** 4:3
  39:4,5,9,11 40:6
  41:2,20 42:5,17
  42:24 43:25
  45:14 46:4,12
  47:5,16,23 49:1
  49:13,19,22
  50:20 51:8 52:3
  53:2,19
**owen** 34:16

**owens** 21:2
  27:23 54:10
**owned** 43:5
  51:16
**ownership** 43:7
  51:18

**p**

**p** 2:1,1 3:1,1 4:1
  4:1 6:1
**p.o.** 4:14
**page** 5:2
**paragraph** 13:16
  13:25,25 14:7,9
  15:1,1,7,13,14
  15:16,17 16:1
**paragraphs** 51:1
**part** 8:8 29:10
  29:10 30:25
  32:14 41:1
**particular** 36:7
  42:6 47:25
  48:10 53:6,8
**particularly**
  39:14
**parties** 58:14
  59:8,11
**passed** 54:20
**passing** 31:8
**patience** 38:25
**patrick** 3:15
**pattern** 40:11
  41:7
**paul** 4:11
**paul.werner**
  4:16
**pellegrino** 9:21

**pennsylvania**
  1:21 2:6,20 3:6
  4:6,22 20:6
**people** 22:16
**permissible**
  52:16,20 53:5,6
**person** 14:19
  24:20,21 31:8
  44:7
**pfeiffer** 19:3
**ph** 28:13
**philadelphia**
  1:21 2:6,20 3:6
**physics** 7:6
**pitts** 31:24
**place** 49:5
**placed** 12:20
**places** 13:15
**plaintiff** 6:5,16
  45:6 50:3
**plaintiff's** 41:24
**plausibility**
  56:17
**plausible** 6:17
  9:19 15:18
  25:10
**plead** 30:6 42:13
  51:7
**pleaded** 13:5
  40:2 52:17,24
**pleading** 15:23
  28:17,18,22 30:3
  30:24 50:18
  55:18
**pleadings** 56:16
**please** 6:4,12
  18:14 20:17
  39:5 58:14

**pled** 17:9 18:7
  18:23 56:5,16
  57:16,17
**pocket** 13:18,20
  13:22 14:12,13
  14:18,19,20 16:2
  16:12,13 28:24
  29:1 43:6 51:2
**point** 9:10 13:1
  13:19 16:3
  20:16 21:17
  22:18 24:7
  29:15 30:8 38:2
  38:7 42:9 44:10
  46:5,6 50:8
  53:22 54:5,8
  56:15 57:15,16
  58:5
**pointing** 15:8
**points** 6:16
**poisoned** 22:16
**policy** 17:24
  27:18,22 37:19
  52:16,20
**pooler** 20:25
  26:17 40:14
  41:7 44:5 48:11
  48:11,16,25 49:1
  49:14 50:8,9
  54:21 58:2
**poor** 49:12
**poorly** 26:4
**position** 25:22
  26:25 30:23
  32:20 35:10,10
  40:21 41:2
**possess** 48:21

**possibilities** 29:24

**possibility** 30:21 32:8

**possible** 8:22 10:10 22:10 23:2 47:23

**possibly** 30:14

**power** 47:4

**precedent** 28:16 33:21 38:19

**preclude** 53:1

**preferential** 53:13

**prepared** 59:3

**prescribe** 40:9 41:4

**prescribed** 41:6

**presented** 6:24 35:24 42:11 43:11

**presenting** 15:19 41:25

**preserve** 8:19

**press** 21:7 23:7,9 23:11,13

**presumably** 37:2 51:16

**previous** 46:17

**principle** 37:18

**prison** 23:21

**privacy** 18:8 19:11,16 20:8 58:8

**probable** 6:19 9:12,15 11:18 19:13 20:9 33:9 35:13,20 40:12

40:20,22,25 43:13 48:8 49:8 51:13 56:2 57:10

**problem** 28:5 35:6 38:9 41:15

**proceeding** 51:23 58:18 59:4

**proceedings** 59:6

**proceeds** 32:13

**process** 18:19 55:1

**produced** 58:15

**professor** 6:6 7:4 13:23 14:16,22 16:18 23:12 30:18,18 43:4 51:14 54:6

**pronounce** 6:7 39:7

**proof** 35:7

**properly** 20:14

**proposition** 26:23 27:13

**prosecute** 38:1

**prosecuting** 41:12

**prosecution** 6:18 7:11,15 8:6 18:7 19:4,11,17 20:7 32:24 33:8 35:19 40:19 41:8,17,22 42:4 42:11 46:15 47:7,14,19,22 48:12 50:13

52:19 54:24 55:18 56:1 57:9 58:8

**prosecutor** 47:22

**prosecutors** 42:11

**protect** 22:21 34:21 48:14

**protection** 55:21

**protective** 21:16 31:4

**prove** 31:25

**proven** 50:4

**provide** 45:18

**provided** 11:23 11:25 14:3 15:3 42:8,10 51:24

**provides** 44:21

**provision** 24:1 47:4

**provisions** 17:23

**proximate** 22:1

**ptoomey** 3:19

**public** 22:21 31:3

**pull** 22:19

**purchased** 43:4 51:15

**purpose** 57:21

**purposeful** 49:8

**purposes** 42:20 52:19 55:16 56:24 57:22

**push** 35:1 55:5

**put** 26:12 45:6 50:25 58:16

**puts** 26:2

**putting** 21:8 52:12

**q**

**qualified** 34:9,14 34:19,21,21,24 35:2,15 36:11,13 36:19,22 37:7 45:3 54:11

**qualifying** 19:10

**quality** 48:23 49:11,17,25

**question** 22:15 39:15 54:12 56:9 57:5

**quintessentially** 48:13

**quite** 7:12 50:10

**quote** 54:16

**r**

**r** 2:1 3:1 4:1 6:1

**race** 20:9 56:12 57:7

**racial** 31:24 33:6 38:10 56:5

**range** 29:24

**reach** 54:19 55:20

**read** 24:12,16 32:21 54:10

**reading** 36:20 45:18 52:10 53:23

**reads** 50:15

**real** 42:9

**really** 10:13 11:4 23:6 35:1,6

**reason** 19:19
   22:7
**reasonable** 45:9
**reasons** 12:14
   34:12 40:15
**rebuttal** 5:6 6:12
   39:1
**received** 22:6
   31:10
**recklessly** 15:16
   51:24
**recklessness**
   30:12
**recognized** 25:4
   28:11 39:22
**reconsideration**
   55:12
**record** 31:11
   59:5
**recording** 59:4
**reflects** 48:12
**regardless** 40:23
**regs** 46:25
**regulation** 17:24
   27:18,22 37:19
**regulations**
   54:14,15
**regulatory** 53:9
   53:12
**rejected** 54:11
**rejecting** 10:13
**relate** 42:15
**related** 14:18
   30:16 59:7
**relates** 29:2
   57:23
**relative** 59:10

**release** 21:7 23:7
   23:9,11,13
**released** 23:7
**relevance** 57:2
   57:21
**relevant** 21:17
   22:8 25:15
**reliable** 16:16
**reliance** 48:16
**reluctance** 12:20
**rely** 44:6
**relying** 44:13
**remand** 18:16
   55:5,11
**remember** 18:18
   30:25
**removes** 33:21
**rendell** 1:19 55:4
**reply** 44:10
**reputational**
   21:9
**require** 43:7,14
**required** 19:1
   43:19 44:9
   51:18
**requirement**
   34:2 35:13 37:3
   40:8,9 41:3,4
   52:13 53:12
**requirements**
   39:19
**requires** 39:24
**resented** 29:18
**reserve** 6:11
**resist** 55:4
**resolve** 43:14
**respect** 23:24

**response** 20:23
**result** 25:11
**retaliation** 32:24
**returned** 15:15
   31:14
**reveal** 16:11
**reverse** 26:17
**reverting** 45:1
**reviewed** 54:2
**right** 9:12 10:3,9
   10:18 11:8 12:8
   12:15,23 17:16
   18:2 19:18 20:5
   21:23 22:10,12
   22:14,15,20,25
   23:10 24:8,17
   27:20 28:13,25
   29:9,11,25 30:8
   30:11,19 31:15
   32:16,19 33:3,7
   33:15 34:3,22
   35:8 36:14 37:4
   37:16,18,21 38:8
   53:18 56:2 57:1
   57:3,3,4,4,24
   58:1,9
**rights** 38:11
   48:19 54:6
**rise** 29:16 30:6
   51:12,22
**risk** 32:15,17
**room** 38:21
**rudovsky** 2:3,4
   2:18 3:4 6:4,5,9
   6:11,14 7:10,20
   8:7,12,25 9:17
   9:19 10:1,3,5
   11:6,8,22 12:6,9

12:12,15,17,19
12:24 13:1,15
14:7 15:1,5,13
15:24 16:24
17:4,11,14,17
18:3,16,22,24
19:12,18,25 20:4
20:12,18 21:10
21:14 22:3
23:10 24:24
26:14 27:11,13
27:18,21 28:7,9
28:21 29:20,23
30:1,4,7,22 31:6
31:11,21,23 32:3
32:7,9,18 33:3
33:15,17 34:8,11
36:4 37:6,16,22
46:6 50:25
53:20,21 55:15
55:22 56:14
57:1,3,15,25
58:9,11
**ruined** 8:5
**rule** 36:17 43:14
**run** 10:23 38:25
   52:24

**s**

**s** 2:1 3:1 4:1 5:1
   6:1
**satisfies** 28:20
**satisfy** 33:1 40:8
**saw** 21:22
**saying** 7:11 8:17
   16:21 27:2 36:5
   51:20

**says** 15:4,16
  17:24 20:21
  24:3,8 25:24
  26:1 27:15,24
  31:25 35:5
  37:22 52:15
  58:3
**schematics**
  14:15
**scholars** 34:4
**scientific** 16:4
**scientist** 29:11
**scientists** 31:15
**scrutiny** 10:17
  32:16
**search** 8:1,2,6,9
  8:10 9:11,14,24
  11:17,25 19:13
  20:8 21:19 33:9
  35:19 42:22
  49:7 56:1 57:10
**searched** 23:16
  23:16
**searches** 6:18
  37:23,23 49:4
**second** 6:17 22:4
  30:13
**secrecy** 23:5
**secrets** 16:11
**section** 4:5 24:17
**security** 8:21 9:7
  9:8,24 10:8,12
  11:5,9
**see** 19:9 28:18
  34:6 53:6
**seek** 16:7
**seizure** 8:2,6

**selective** 47:19
  47:21
**send** 18:10
**sense** 38:14
**sent** 13:21 14:16
**separate** 14:21
  19:5 23:8
**september** 1:15
**sequence** 14:24
**sequencing**
  42:20
**set** 10:6
**shared** 16:18
**sharing** 29:11
**sharon** 4:19
**sharon.swingle**
  4:24
**shivers** 24:9
  25:24 45:21
**show** 13:11 19:1
**shu.edu** 3:13
**side** 52:8
**sides** 25:3
**sign** 43:7 51:18
**silence** 32:23
**similar** 7:15
  38:24 48:5
**simply** 10:8
  40:25
**single** 25:9,9,19
**situation** 7:16
  23:2 27:10
  35:19 47:1
**six** 9:4 14:8
**skills** 59:6
**slin** 2:21
**smoking** 32:3

**sole** 22:23 48:22
**somebody** 38:1
**somewhat** 16:5
**soon** 40:1
**sorry** 18:4 20:15
  33:25
**sort** 9:24 13:8
  40:12 41:10,11
  43:10,12,14 44:1
  44:6,8,23 45:15
  45:18 47:6,11,12
  47:25 48:12
  50:3,12 51:10,11
  51:21 52:2,2,4
  53:13
**sought** 15:15
**south** 2:5,19 3:5
**sovereign** 45:13
  45:17
**special** 1:10 6:3
  13:10 31:17
  42:14 43:1 51:2
**specific** 8:19
  10:23 18:21,24
  28:18 31:22
  36:11 37:11,14
  37:24 38:2,3
  39:24 41:5
  42:23 43:24
  44:8,12,15,22,25
  45:4 46:13 51:6
  52:9 56:12
**specifically** 13:9
  21:4 32:14 40:9
  41:4 42:13 49:3
**specificity** 13:13
  15:8 39:16 40:8
  42:9

**spoke** 13:19
**spy** 7:5 23:17
**spying** 8:21
  10:11
**stage** 29:4 30:24
  32:12 33:5
  51:13 52:22
**stand** 55:23
**standard** 15:22
  35:23 42:4
  43:13 44:18,23
  45:15 48:8 50:6
  50:16 52:13,18
  53:10 55:3
**standards** 44:19
**standing** 56:8
**stands** 56:4
**start** 7:1 13:4
  39:12
**started** 7:10
**state** 13:25 14:2
  20:1,5,5,6,14,14
  20:19 27:2,3
  33:20 49:23
**stated** 18:18
  50:22
**statement** 21:20
  42:7,23 51:25
**statements** 42:21
  51:4
**states** 1:1 4:4,12
  4:20 13:16
  34:20 36:15
  38:13 47:9
**station** 4:14
**statute** 17:24,25
  27:14,15,15,22
  36:21 37:19

| | | | |
|---|---|---|---|
| 46:22 | sufficiently 13:5 | **t** | 53:21 |
| **statutes** 46:24 | 44:11,15,21,25 | | **things** 8:22 |
| 48:19 54:14,15 | 45:4 52:9,23,24 | **t** 5:1,1 | 16:14 47:1 |
| **statutorily** 47:10 | **suggested** 36:21 | **take** 20:2 21:12 | **think** 7:20 21:14 |
| **statutory** 24:11 | **suggests** 16:7 | 36:10 40:6 | 22:4,7 25:17,21 |
| 25:16 39:18 | 22:1 26:10 31:7 | 46:11 47:7 | 28:13,14 29:6 |
| 41:4 52:14 | **suite** 2:5,19 3:5 | 58:16 | 30:10,22 34:11 |
| **step** 27:3 | **summary** 54:3,7 | **taken** 26:18 59:9 | 36:4 38:23 |
| **stephanos** 1:18 | 55:14 | **talisman** 10:12 | 39:12 45:21 |
| **stitch** 51:8 | **superconducti...** | **talk** 14:6 19:24 | 46:6 49:19,22 |
| **straight** 11:14 | 14:21 | 20:11 21:10 | 52:6 53:8,21 |
| **street** 1:20 2:5 | **supervened** | 25:21 57:19 | 54:8 55:7,22,24 |
| 2:12,19 3:5,17 | 22:14 | **talking** 13:5 23:6 | 56:4,15,20 |
| **strict** 10:17 | **support** 16:17 | 45:7 49:1 | **thinking** 10:25 |
| 32:15 | **supposed** 41:23 | **technological** | **third** 1:2 30:17 |
| **strip** 8:10 23:16 | 52:22 | 7:5 23:17 | **thought** 29:5 |
| **strong** 46:6 | **supreme** 8:17 | **technology** 43:5 | **three** 6:15 7:14 |
| **stuff** 21:16 42:3 | 21:1 34:13 | 51:15,17,21 | 8:19,23 21:21 |
| **subject** 31:3 | 37:10 38:13 | **tell** 51:4 | 57:13 |
| 41:9 47:14 | 39:16,21 44:8 | **telling** 51:2 | **time** 1:16 15:11 |
| **subjected** 6:18 | 46:1,7,11 50:9 | **tells** 10:24 16:9 | 36:9 38:25 |
| **subjective** 44:6 | 55:10 | **temple** 7:6 23:19 | 40:22 45:5 55:7 |
| 50:11 53:3 | **sure** 8:17 25:3 | **tenable** 32:25 | **timing** 51:10 |
| **submission** | 30:10,16 32:13 | **terms** 10:25 31:2 | **toaster** 16:14 |
| 58:17 | 34:17 54:18 | 31:18 33:6 | **told** 15:12 16:2,3 |
| **submit** 6:15 | **surely** 40:3 | 35:23 44:11 | **toomey** 3:15 |
| 28:13 41:12 | **surrick** 13:7 | **terrain** 11:4 | **tort** 6:21 12:21 |
| 48:7 50:22 | 14:1 17:1 38:15 | **tested** 38:25 | 13:3 16:22,22 |
| **subparts** 14:8 | 55:6 | **tests** 39:21 | 18:6 19:10,20,21 |
| **succeed** 55:25 | **susan** 2:17 | **text** 45:20 46:1,2 | 19:23 20:20 |
| **sued** 36:14 | **suspected** 31:8 | 46:3 | 22:13 23:23 |
| **suffered** 8:9 | **suspended** 7:5 | **textual** 45:23 | 24:1 36:15,23 |
| 23:15 | 23:19 | 52:11 | 45:13 55:16 |
| **sufficiency** 15:22 | **suspicion** 7:8 | **thank** 39:2,11 | 56:24 57:17,22 |
| 50:18 55:17 | **suspicious** 43:15 | 53:18,19 58:10 | **torts** 4:13 24:12 |
| **sufficient** 33:8 | **swingle** 4:19 | 58:11,12 | 24:14,16 |
| 49:3 56:17 57:6 | | **thanks** 58:17 | **track** 45:25 |
| | | **thing** 10:17 | |
| | | 15:17 40:12 | |

tracks 52:17
transcriber 59:1
transcript 58:15
  59:3,5
treating 46:24
treatment 31:10
  53:13
trial 31:6
tries 27:25 34:25
true 20:22 59:5
trump 25:13
trying 56:23
tsa 9:23 10:5
turn 50:12
turns 10:15 16:6
two 6:11 13:24
  19:5,10 22:10,22
  23:2 25:12,16
  28:12 39:1 55:5
  55:8
twombly 13:6
  28:20 33:2
type 52:18
types 39:18 49:2

**u**

u.s. 14:4 21:6,20
  23:7
uh 27:17
umbrella 20:20
unclear 47:3
unconstitutional
  26:8 34:6 46:22
unconstitution...
  26:4
underlie 58:7
underlying 26:5
  47:6

understand
  12:19 13:2 14:1
  14:1 24:25
  29:14 33:4
  37:17 38:9,20
  56:9,14,19,22,24
understanding
  33:4
union 2:11 3:16
unit 29:10 30:8
  32:14
united 1:1 4:4,12
  4:20 34:20
  36:15 38:13
  47:8
university 7:7
  23:19
unlawful 41:25
  49:3,7
unreasonable
  37:23
unsettled 35:23
usdoj.gov 4:8,16
  4:24
use 25:13
usual 25:18

**v**

v 1:8
vanderklok 9:21
variety 50:13
versus 6:2 8:16
  19:3 21:3 24:21
  27:23 34:16
  50:14 54:10
view 14:14 16:15
  26:18 36:4

violate 18:3,14
  26:24 27:5,7,15
  54:5
violated 35:18
  40:5 48:18 50:6
violates 17:22
violating 27:22
  27:23
violation 11:14
  11:15,20 18:13
  19:22 20:24
  22:24 24:5
  25:10,15 26:24
  27:3 28:5 29:7
  33:20 36:1,6,10
  36:24 37:8 38:4
  40:3,17,24 41:19
  44:13 45:8,25
  47:19 48:3
  49:24 50:22
  51:12 52:5,14,18
  52:24 53:12
  54:24 55:1,21
violations 6:20
  6:23 7:3 17:9
  25:22 48:21
  49:25 54:23

**w**

wait 10:21
waited 55:5
waiver 45:12,17
want 54:4
warrant 9:14
  11:18,25 19:13
  20:8 21:19,20
  37:23 42:22

warrants 11:2
washington 4:7
  4:15,23
water 54:20
way 8:18 19:19
  21:21 26:2
  30:17 46:1,6
  47:3 48:5 51:10
  52:22 56:16
we've 7:13 9:22
  9:22,23 18:18
  19:12,20 24:2
  25:10,24 29:14
  33:19,20 35:5
  55:24
wednesday 1:15
weeds 49:18
weird 37:10
went 8:13 11:23
  38:8 42:21,22
  51:5
werner 4:11
white 31:7
win 55:3
word 25:13
words 57:21
work 30:16
wrestle 38:16
wrong 7:8 18:11
  28:13 29:12
wrongful 8:15
  26:10
wrongly 30:11

**x**

x 1:4,13
xi 1:5 6:2,6,9,10
  6:16 7:4 13:23

14:16,22 16:18
23:12 30:18,18
43:4 51:14
**xi's** 54:6
**xiaoxing** 1:5

| **y** |
| --- |

**yeah** 7:20 20:17
21:10 31:21
35:5 57:14
**years** 17:15,21
23:21 26:15
34:15 38:12
55:6
**york** 2:13,13
3:18,18